UNITED STATES, Appellee

v

RALPH E. REDDING, Airman Third Class
U. S. Air Force, Appellant

14 USCMA 242, 34 CMR 22

No. 16,895

November 22, 1963

*Major Hugh J. Dolan* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel E. Henderson, Jr.,* and *Lieutenant Colonel Quincey W. Tucker, Jr.*

*Major James Taylor, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

KILDAY, Judge:

Both accused and the victim in this unfortunate incident—one Spurlock—were assigned to sentry duty at Larson Air Force Base, Washington. On the afternoon in question, the pair had adjacent posts, guarding combat alert aircraft. Each was armed with a .38 caliber pistol. In the course of the events hereinafter recounted, accused's weapon fired, shooting Spurlock in the right chest.

As a result, accused was tried by general court-martial. He pleaded not guilty, but was convicted of assault with a dangerous weapon, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928, and sentenced to bad-conduct discharge, partial forfeitures and confinement at hard labor for six months, and reduction to the lowest enlisted grade. Such findings and sentence were approved by the convening authority and affirmed by a board of review in the office of The Judge Advocate General of the Air Force.[1]

---

[1] The 3320th Retraining Group at Amarillo Air Force Base, Texas, was designated by the convening authority as the place of confinement. After ac-

Thereafter, accused petitioned this Court for grant of review. We allowed his appeal in order to consider two assignments of error in which accused asserts:

1. That the evidence is insufficient, as a matter of law, to sustain the conviction of assault with a dangerous weapon; and,

2. That the law officer erred prejudicially in his failure to instruct upon the defense of accident raised by the evidence in this case.

## I

A recitation of facts is essential to resolution of the first granted issue, but they are not disputed. Indeed, both accused in his pretrial statement, and Spurlock in his testimony at trial, related that the shooting occurred in substantially the following manner. As previously mentioned, both men were posted as armed sentinels guarding alert aircraft. During the afternoon they met between their adjacent posts and conversed. In the course of the conversation, accused pointed out that the victim might experience difficulty in drawing his weapon if occasion arose, as Spurlock was carrying his .38 caliber revolver in a holster designed for a .45 caliber pistol, with the flap snapped over the butt of the weapon. Thereupon the pair undertook to demonstrate their proficiency in drawing their pistols. They were facing one another about five feet apart, and each withdrew his weapon several times, in fast-draw fashion. Suddenly accused's pistol fired, and the bullet struck Spurlock in the chest.

Both men had been and were, even at the time of trial, friends. No animosity or ill-feeling was known to exist between them. Spurlock had unloaded his side arm before commencing the fast-draw practice, and saw accused undertake to do the same. He believed the accused's weapon was also unloaded, and did not see him reload it. The victim did not observe accused point his pistol directly at

him, cock the weapon, or place his finger on the trigger. Spurlock was never in fear.

In his extrajudicial statement, accused averred that he unloaded his pistol before practicing quick draws. He placed the live rounds in his pocket and did not remember reloading his weapon. He denied either clicking the hammer of his pistol in making the draws, or putting his finger in the trigger guard.

Both men described the incident as an "accident."

The prosecution also established that accused was aware of a standing operating procedure, applicable to him as a sentry, proscribing frivolous handling of weapons or drawing firearms except in the course of duty.

From the evidence it is clear beyond peradventure that the shooting was an unintentional act. Indeed, no one contends to the contrary. Assault with a dangerous weapon, however, as this Court has held from the outset, is not a specific intent offense. Rather, it is a general intent crime which may be committed even by a drunken assailant. United States v Cromartie, 1 USCMA 551, 4 CMR 143; United States v Wright, 1 USCMA 602, 5 CMR 30; United States v Wray, 2 USCMA 26, 6 CMR 26; United States v Backley, 2 USCMA 496, 9 CMR 126. And, while mere negligence will not support a conviction for aggravated assault, the authorities indicate such a finding of guilty may be grounded on culpably negligent conduct even though the assailant did not intend the ultimate consequences of his action.

In this regard, assault with a dangerous weapon—in which death or even actual injury to the victim need not be involved—is not unlike involuntary manslaughter, which of course may be committed by culpable negligence. See Article 119(b)(1), Uniform Code of Military Justice, 10 USC § 919; United States v Moore, 12 USCMA 696, 702, 31 CMR 282. Thus

cused's arrival there his forfeitures were remitted in part, and the execution of the punitive discharge was

suspended with provision for automatic remission.

paragraph 207a, Manual for Courts-Martial, United States, 1951, at pages 370 and 371, sets forth the rule that an assault, or a battery, may be committed by a culpably negligent act or omission. And, while Manual pronouncements in the area of substantive law do not gain force merely by reason of their inclusion there,[2] in this instance the validity of the rule is well recognized. See 6 Am Jur 2d, Assault and Battery, §§ 6, 14, 48; 6 CJS, Assault and Battery, §§ 63, 77 87; Brimhall v State, 31 Ariz 522, 255 Pac 165 (1927); People v Benson, 321 Ill 605, 152 NE 514 (1926); United States v Berry, 16 CMR 842, pet den 5 USCMA 843, 17 CMR 381; cf. United States v Allen, 10 CMR 424; United States v Smith, 15 CMR 510; United States v Crosley, 25 CMR 498.

Counsel for the parties are not in disagreement with the above rule. Rather, they part only over its application, for the defense asserts vigorously that accused's conduct does not constitute the requisite culpable negligence. The board of review, however, found to the contrary, both as a matter of law and factually as well. Viewing the evidence from the standpoint most favorable to the Government—as we must[3]—we are constrained to agree that it is sufficient, as a matter of law, to support a finding of culpable negligence.

Culpable negligence is correctly defined by the Manual as:

". . . a degree of carelessness greater than simple negligence. It is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of such act or omission." [Paragraph 198b, Manual for Courts-Martial, United States, 1951.]

Here the evidence shows accused was, in the course of his duty, armed with a loaded pistol, the lethal nature of which weapon is patent. Despite his asserted belief he had unloaded his side arm before indulging in fast-draw practice, there can be no doubt that at least one bullet was left in the pistol. So, too, there is little question that, while facing his friend at extremely close range, accused pointed the weapon at Spurlock, for the round struck the victim in the chest when the pistol discharged. And despite the fact accused does not remember aiming his weapon at Spurlock, or fingering the trigger, it may fairly be concluded that he did so in the course of repeated exhibitions of his expertise at a fast draw—demonstrations the very nature of which raise the risk of unintentionally pointing and triggering a weapon. Manifestly, the bullet wound Spurlock suffered could be attributed by the triers of fact to accused's careless acts and omissions in indulging in a game with an instrument of known dangerous capability while facing his friend and within five feet of him, in culpable and reckless disregard of the foreseeable consequences that actually resulted here.

Moreover, it may be noted there was no necessity—even accepting accused's statement—for him to indulge in this dangerous practice. Certainly concern over Spurlock's ability to draw his .38 caliber revolver from a holster not designed for that weapon would not require accused to exhibit his own proficiency to draw quickly. Indeed, accused was aware of instructions applicable to him as a sentry which condemned such frivolous actions with his side arm.

With the record in this posture, we are constrained to hold the evidence is legally sufficient to support a finding of assault with a dangerous weapon by culpable negligence. Accordingly, the first assignment of error must be resolved adversely to accused.

II

That brings us to the second assigned error, which is closely allied with the first. Although we have found the evidence legally sufficient to support the findings, appellate defense

[2] See United States v Smith, 13 USCMA 105, 32 CMR 105.
[3] United States v Parham, 14 USCMA 161, 33 CMR 373; United States v Wilson, 13 USCMA 670, 33 CMR 202.

counsel assert it surely permits the conclusion that the unfortunate wounding of Spurlock was an unintended mishap not the result of criminal negligence. In this connection, the defense emphasizes the common description of this affair, by both accused and the victim, as an accident. Accordingly, we are urged to overturn the conviction on the basis that the law officer's failure to instruct the court members, *sua sponte,* upon the defense of accident, constitutes prejudicial error.

Again the parties are not in dispute over the rule but only over its applicability to the present facts, for accident may constitute a defense to the offense with which we are concerned. Thus, the principle is recognized that an unintentional lawful act, done in a lawful manner with due care, will not constitute an assault. See Miller, Handbook of Criminal Law, § 53 (1934); Clark and Marshall, A Treatise on the Law of Crimes, 6th ed, § 7.02; 6 CJS, Assault and Battery, § 87. And the Manual for Courts-Martial, United States, 1951, also properly sets forth the rule that the consequences of an accident or misadventure in doing a lawful act in a lawful manner are excusable. See paragraphs 197c and 207a. See also United States v Hubbard, 13 USCMA 652, 33 CMR 184; United States v Sandoval, 4 USCMA 61, 15 CMR 61; United States v Bull, 3 USCMA 635, 14 CMR 53; United States v Weems, 3 USCMA 469, 13 CMR 25; United States v Crosley, 25 CMR 498.

Much of the prior discussion is pertinent here, also. Thus, appellate defense counsel are eminent- ly correct in their claim that the evidence shows the shooting was unintended. That, however, is not sufficient to raise the defense of accident. Neither is accused's and Spurlock's characterization of the incident as an "accident." In law, these descriptions by lay individuals—even though personally involved—simply reinforce the conclusion that the shooting was unintentional. "Accident," in proper use of the term,

excludes negligence and wrongdoing, as is clear from the previously cited cases. See also Black's Law Dictionary, 4th ed, page 30; Dallas Ry. and Terminal Co. v Allen, 43 SW2d 165 (Texas) (1931); and Commonwealth v Flax, 331 Pa 145, 200 Atl 632 (1938), cited in United States v Sandoval, supra.

Under the facts previously set forth, it may be repeated, as was stated in United States v Crosley, supra:

". . . To be excusable as an accident, the act must have been the result of *doing a lawful act in a lawful manner, free of negligence.* It cannot be seriously contended in this case that there was an absence of some negligence on the part of the accused, in the handling of the gun. . . ." [25 CMR at page 501.]

First, the record clearly shows accused was engaged in conduct condemned by standing operating procedures for sentries. More important, even the defense at trial recognized that accused was not free of negligence in his conduct. We note that defense counsel, in his argument on the merits, importuned the court-martial to reject a finding of assault with dangerous weapon by culpable negligence in favor of a finding of the lesser included offense of careless discharge of a firearm under Article 134, Uniform Code of Military Justice, 10 USC § 934. He freely, frankly, and repeatedly conceded careless and negligent action by accused.

Under the circumstances, we hold the law officer did not commit prejudicial error in his instruc- tions. He properly advised the triers of fact as to the elements of assault with a dangerous weapon by culpable negligence, and correctly defined the latter term. Thereafter, in charging the court members on the included offense under Article 134, he instructed they must find the discharge of the weapon must have been caused by accused's carelessness in order to convict him for that delict. The defense requested no amplification nor additional instructions, and indicated its satisfac-

246

tion with those given by the law officer. We conclude they fairly submitted the controverted issues to the court-martial. The final assignment of error, therefore, is also without merit.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.