**UNITED STATES, Appellant,**

v.

**Joe JOHNSON, Jr., Private, U. S. Army, Appellee.**

No. 29,198.

U. S. Court of Military Appeals.

May 30, 1975.

---

1. *See also United States v. Wright*, 20 U.S.C. M.A. 12, 42 C.M.R. 204 (1970); *United States v.* *Pryor*, 19 U.S.C.M.A. 279, 41 C.M.R. 279 (1970).

*Captain John R. Erck* and *Lieutenant Colonel Ronald M. Holdaway* argued the cause for Appellant, United States. With them on the brief were *Lieutenant Colonel Donald W. Hansen* and *Captain Steven M. Werner.*

*Captain David A. Shaw* argued the cause for Appellee, Accused. With him on the brief were *Colonel Victor A. DeFiori, Captain Winston E. King, Captain Anthony J. Siano,* and *Captain Albert T. Berry.*

## OPINION OF THE COURT

COOK, Judge:

There are aspects of this case that are very disturbing.

Originally, a special court-martial, consisting only of a military judge, found the accused guilty pursuant to his plea of unauthorized absence and wrongfully possessing a ration card, in violation of Articles 86 and 134, respectively, of the Uniform Code of Military Justice.[1] The only offense we are concerned with now is the absence that was charged to have begun on September 23, 1971, and continued until March 20, 1973, when accused was apprehended.

At trial, the military judge made an inquiry into the providence of the guilty plea which complied with the requirements established by this Court in *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). Upon review, however, the Court of Military Review determined that the inquiry was deficient and the plea was improvident, as contended by appellate defense counsel. This determination was based on evidence introduced at a pretrial investigation conducted under the provisions of Article 32, UCMJ, 10 U.S.C. § 832, and made a part of the allied papers that accompanied the transcript of the trial proceedings. This evidence indicated that the absence had terminated on December 26, 1971, with accused's return to military con-

1. 10 U.S.C. §§ 886 and 934.

trol, and the Court of Military Review modified the findings to reflect this shorter period. This action of the Court of Military Review occasioned the certification by the Acting Judge Advocate General of the Army of an issue which questioned whether the court was "correct in examining the allied papers to determine if the military judge's inquiry into the providency of the appellee's guilty plea was adequate."

■ Briefs setting out the positions of opposing counsel were filed which addressed only the propriety of the action of the Court of Military Review. During the oral argument, however, we were apprised of the matter that gives us difficulty. At that time, both counsel conceded that the absence which had begun on September 23 in fact terminated on December 26, 1971, as has been found and approved by the Court of Military Review. This concession demonstrated that the plea was improvident and the consequent finding based on a falsehood. In addition, the record shows that the same attorney represented the accused at trial and the pretrial investigation. The true facts were, in part, developed by him during the course of the Article 32 hearing and were able to be confirmed by the Government's representatives who each, in turn, advised the convening authority and prosecuted the charges. Accordingly, two conclusions are almost inescapable: first, the true facts were known before the parties went to trial; and, second, these same parties were prepared to deceive the trial judge and violate the mandate of Article 45, UCMJ, 10 U.S.C. § 845. Although that article, by its terms, relates to a situation following a guilty plea and provides that when matters inconsistent with the plea are entered, the plea must be vacated· it also contemplates that a plea, when entered, must be in accordance with the actual facts. In other words, the plea of guilty is responsive to truth. To that extent, military practice differs from civilian practice. There, an accused may enter a guilty plea not just with a limitation he believes himself innocent, but even that he may be so. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

■ It was with a recognition of these differences and with a purpose to effectuate Article 45, UCMJ, that the *Care* procedure was promulgated. It was intended to obviate later disputes of improvidence and to have the record reflect a complete understanding by an accused of the consequences of his conduct and that he was, in truth, guilty. There may be instances where an accused acknowledges the facts but the legal implication of them is not understood or appreciated at the trial. For example, in *United States v. Welker*, 8 U.S.C.M.A. 647, 25 C.M.R. 151 (1958), the accused admitted he received a Government rifle from a fellow soldier and kept it as his own. He pleaded guilty to and was found guilty of larceny of Government property. On the facts, however, his offense could be no more than the receipt of stolen property. Thus, the improvidence of his plea resulted from a misunderstanding of the legal consequences of his act. But that is not the situation here. Instead, and whatever accused's understanding, the true facts were known to be contrary to what he was admitting by his plea. Thus, those responsible for prosecuting an offense only to the limit of a wrong and those responsible for representing accused were derelict when they allowed the entry of a plea of guilty for a period greater than that established by the known facts.[2] By their omission, they permitted the military judge to accept an improper plea in subversion of the Uniform Code.

---

2. Canon 7 of the Code of Professional Responsibility adopted by the American Bar Association and as made applicable to military counsel by Army Regulation 27–10, paragraph 4–2 [now 4–4], provides that a lawyer has a right to represent his client with zealousness but his right must be exercised within legal bounds. As an officer of the court, he has a duty to maintain the integrity of the judicial system. *In re Williams*, 158 F.Supp. 279 (1957). Under the disciplinary rules relating to canon 7, a lawyer can neither participate nor assist his client in conduct he knows to be false or fraudulent and his failure to reveal to the court the true facts if his client refuses or is unable to do so may not be tolerated. ABA Code of Professional Responsibility, DR 7–102(A)(6–7); DR 7–102(B)(1). Nor could counsel for the prose-

■ The import and intent of *Care* is that the record contain the true facts of the accused's offense. So that there may be no doubt, if any there be, we stress again that under *Care*, the inquiry into the providence of accused's proposed plea of guilty deals with truth and all parties have an obligation to establish that truth on the record.

■ The Court of Military Review has rectified the distortion in this record by reducing and reassessing the findings and sentence to conform to the facts. The concession made by the Government before us has put the record of trial in the posture it should have been in at the time of accused's plea. In these circumstances, we do not believe that further proceedings are required. Accordingly, we need not formally respond to the certified question, whatever the answer. The decision of the Court of Military Review is affirmed.

Senior Judge FERGUSON concurs.

Chief Judge FLETCHER did not participate in the decision of this case.

*Colonel Victor A. DeFiori, Captain Claud H. Drinnen,* and *Captain Robert C. Mueller* were on the pleadings for Appellant, Accused.

*Captain Joel M. Martel* and *Captain Allan A. Toomey* were on the pleadings for Appellee, United States.

cution knowingly fail to act where he knew the true facts because his responsibility is to seek justice and not merely to convict on any terms. DR 7–102(B)(2).

No separate code of ethics applies specifically to a staff judge advocate or a commanding officer exercising authority in the court-martial processes, but they are held to the same standards of truth and integrity in the discharge of their respective functions. *See* Article 98, UCMJ, 10 U.S.C. § 898; *United States v. Dickerson,* 22 U.S.C.M.A. 489, 490, 47 C.M.R. 790, 791 (1973).