**UNITED STATES, Appellee,**

v.

**Specialist Five Martin D. YOAKUM, SSN 266–21–7765, United States Army, Appellant.**

**CM 438142.**

U. S. Army Court of Military Review.

4 Feb. 1980.

---

764

Captain Julius Rothlein, JAGC, and Captain Terrence L. Lewis, JAGC, argued the cause for the appellant. With them on the brief were Colonel Edward S. Adamkewicz, Jr, JAGC, Lieutenant Colonel John F. Lymburner, JAGC, and Major Charles A. Byler, JAGC.

Major Robert B. Williams, JAGC, argued the cause for the appellee. With him on the brief were Lieutenant Colonel R.R. Boller, JAGC, and Major David McNeill, Jr, JAGC.

Before FULTON, WATKINS and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

FULTON, Senior Judge:

A general court-martial convicted the appellant, Specialist Yoakum, of aggravated assault and willfully damaging private property.

The events leading to his trial occurred at Redstone Arsenal, Alabama, in the early morning hours of 2 February 1978, when the Noncommissioned Officers Club closed. As the patrons left for the night, two of them, Specialist Yoakum and his girlfriend, Linda, engaged in a heated argument on the steps adjacent to the driveway and parking lot. Some physical contact ensued. Specialist Harris, who had been among those inside, was sitting in Sergeant McCraney's car, parked at the curb, waiting to return with McCraney to the barracks. Harris told Yoakum to stop pushing or "manhandling" Linda and asked Linda if she wanted a ride. Using a racial epithet and foul language, Yoakum threatened Harris. Linda left on foot. Yoakum went to a parked truck that he earlier had borrowed from Specialist Sparks for use in taking Linda home. Harris remained standing beside Sergeant McCraney's vehicle, evidently conversing with some other soldiers.

Within moments, the truck operated by Yoakum appeared in the driveway travelling at a speed variously estimated as being from 35 to 45 miles per hour, proceeded

directly toward Harris, and struck both him and the car beside which he was standing. Harris sustained multiple fractures, including rib, pelvis, knee, and internal injuries. The two vehicles (Sparks' truck and McCraney's car) sustained damage stipulated as amounting to $2,900.00.

As a result of the incident, Yoakum was charged with assaulting Specialist Harris with intent to murder him, recklessly operating the truck by causing it to collide with the parked vehicle, and willfully and wrongfully damaging both vehicles.

Yoakum pleaded not guilty of assault with intent to commit murder, but guilty of a lesser included offense of recklessly operating the truck by causing it to injure Harris. (As a result of that plea, the separate charge of recklessly operating the truck by causing it to collide with another vehicle was dismissed on unopposed motion of the defense.) He likewise pleaded not guilty of willfully and wrongfully damaging the two vehicles. He denied (despite the contrary testimony of four witnesses) that he had threatened Harris, and further denied any intent to frighten Harris, much less to injure him. He said that he had gotten into the truck in an angry mood because Linda would not accompany him and had "gunned" the truck on his departure. When he saw Harris, he said, he attempted to swerve the truck (which was equipped with power steering), but the wheel must have slipped in his hands.

As to the charge of assault with intent to commit murder, the court members returned a finding of not guilty, but found Yoakum guilty of the lesser included offense of assault with a means (the truck) likely to produce grievous bodily harm, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (1976). The court also found appellant guilty of willfully damaging the vehicles in violation of Article 109, Uniform Code of Military Justice, 10 U.S.C. § 909 (1976), and imposed a sentence of confinement at hard labor for two years, forfeiture of $400.00 pay per month for 24 months, and reduction to the grade of Private E–1. The convening authority approved the sentence. The record of trial has been referred to this Court for review pursuant to Article 66(b), Uniform Code of Military Justice, 10 U.S.C. § 866(b) (1976).

Errors initially asserted by the appellant for our consideration on this appeal challenge (a) the sufficiency of evidence that the damage to the vehicles was caused willfully, (b) failure of the military judge to restrict the court members' possible consideration of uncharged misconduct (involving the presence of a shotgun in the truck), (c) conviction by a possibly nonunanimous "jury" of six, (d) denial of appellant's request to defer serving his sentence to confinement until completion of appellate review, and (e) the sufficiency of preprinted forms furnished for use in applying for deferment at the Disciplinary Barracks. In addition, appellant argues that his sentence to confinement is too severe.

Following oral argument in this case, we granted appellant's motion to brief and argue an additional assignment of error in which it is contended that the court members were erroneously instructed that assault with a means likely to produce grievous bodily harm could occur through culpably negligent driving of an automobile when in fact the same recklessness arguably constituted the lesser offense of reckless driving.

The Court finds these assignments of error nonmeritorious and affirms the conviction.

I

Specialist Yoakum asserts that the evidence that the damage to the vehicles was willfully caused is insufficient in law and fact to sustain his conviction. His contention rests on *United States v. Bernacki*, 13 U.S.C.M.A. 641, 33 C.M.R. 173 (1963), in which the Court of Military Appeals held that the offense of willfully damaging nongovernmental personal property under Article 109 requires a specific intent to damage the property and that a mere reckless disregard of property rights, even of high degree, would not suffice. *Id.* at 643, 33

C.M.R. at 175. Neither does the fact that the act causing the damage was itself an intentional act necessarily establish that the intent was to cause the resulting damage to property. *United States v. Blackwell*, 39 C.M.R. 394, 397–98 (A.B.R.1968) (victim of assault fell when struck, and eyeglasses broke); *accord, United States v. Jones*, 50 C.M.R. 724 (A.C.M.R.1975) (facts not indicated).

That is not to say, however, that the intent to damage the property cannot be proved circumstantially. "Willfullness may be shown by direct evidence, as by remarks of the accused at the time, or circumstantially, as by the manner in which the acts were done." Manual for Courts-Martial, United States, 1969 (Revised edition), par. 188*b*; *see* Department of the Army Pamphlet 27–2, Analysis of Contents: Manual for Courts-Martial, United States, 1969 (Revised edition), p. 28–10 (1970).[1]

The record of trial shows that Yoakum got into his vehicle in a highly angered, vengeful state of mind; "revved" the engine, causing the wheels to spin; reached a high rate of speed (particularly for a parking area) in a short distance; aimed his vehicle unerringly at Harris as well as at the parked vehicle from which Harris had dismounted; and made no effort to stop until after he had damaged all three. This is circumstantial evidence from which the finders of fact properly could determine that Yoakum intended to damage the vehicles as well as to injure Harris.[2] It was, therefore, sufficient as a matter of law. As to its sufficiency in fact, the court members were correctly instructed and obviously were convinced beyond a reasonable doubt that the damage to the vehicles was willfully caused. This Court is equally convinced. *See* Article 66(c), Uniform Code of Military Justice, *supra.*

## II

A witness who accompanied Yoakum to the truck (expecting to ride back to the company) testified that, as Yoakum entered the truck, he pulled a shotgun from behind the seat and laid it on the seat (telling the witness to go repeat his earlier threat to Harris). Another witness testified that, when the truck operated by Yoakum finally came to a stop, Yoakum seemed to draw out a rifle or a shotgun (that witness took refuge inside the club without waiting to see which it was).

Appellant contends that his substantial rights were prejudiced because the military judge did not "instruct [the court members] on this issue"—by which, we assume, is meant an instruction that the evidence should be considered only with respect to the particular inference that it might support, and should not be viewed as supporting an inference of appellant's guilt on the basis of a criminal disposition or bad character. *See United States v. Grunden*, 2 M.J. 116, 119 (C.M.A.1977).

We hold that no such instruction was required in this case. Alternatively, the absence of an instruction was harmless.

Evidence that the appellant, upon entering the truck, moved a firearm to a more accessible location was evidence of conduct integral to the assault charged—as was evi-

---

1. We note that the cases relied upon by the appellant involve, insofar as the facts have been disclosed in the opinions, situations in which an accused had an affirmative reason to avoid damaging the automobile he was using. In both *United States v. Bernacki*, 13 U.S.C. M.A. 641, 33 C.M.R. 173 (1963), and *United States v. Fuller*, 27 C.M.R. 540 (A.B.R.1958), the driver was fleeing from police and presumably did not wish to be stopped by running off the road (*Bernacki*) or colliding with a stationary object (*Fuller*). A useful comparison is afforded by *United States v. Wolfgang*, 23 C.M.R. 848 (A.F.B.R.1957), in which the appel-

lant was charged with both stealing and willfully damaging a vending machine coin box, apparently in removing it from the machine. The Board of Review recognized that specific intent was required for damaging the coin box as well as for stealing it. The conviction was reversed, but only because an impaired mental capacity prevented formation of the specific intents.

2. That is, the court members could find that damage to the vehicles was so certain that the appellant must have done it purposefully, rather than believing that he was merely indifferent to the consequences, however foreseeable.

dence of his verbal conduct consisting of threats to Harris. Therefore, no limiting instruction was required. *United States v. Tobin*, 17 U.S.C.M.A. 625, 631, 38 C.M.R. 423, 429 (1968); *accord, United States v. James*, 5 M.J. 382, 383 (C.M.A.1978) (Cook, J., concurring); *see also United States v. Montgomery*, 5 M.J. 832, 834–35 (ACMR), *pet. denied*, 6 M.J. 89 (C.M.A.1978).[3]

## III

■ Appellant's third assignment of error seeks to apply to courts-martial the Supreme Court's holding in *Burch v. Louisiana*, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979), regarding the unanimity of civilian juries. The rule is inapplicable for the reasons we recently stated in *United States v. Guilford*, 8 M.J. 598 (A.C.M.R.1979).

## IV

■ The next two assigned errors concern release from confinement pending appeal. The officer exercising general court-martial jurisdiction over an accused sentenced to confinement may, on application of the accused, defer service of the confinement until the sentence is affirmed and ordered executed. Article 57(d), Uniform Code of Military Justice, 10 U.S.C. § 857(d) (1976). If the application is denied, military appellate courts may, in the course of appellate review examine the convening authority's action to determine whether he abused his discretion. *United States v. Brownd*, 6 M.J. 338, 339 (C.M.A.1979); *cf. Corley v. Thurman*, 3 M.J. 192 (C.M.A.1977) (mem.).

The Court of Military Appeals has ruled that the convening authority's exercise of discretion is to be guided by the American Bar Association Criminal Justice Standards, Criminal Appeals, section 2.5(b) (Approved

Draft 1970). *United States v. Brownd, supra*, 6 M.J. at 339. Those standards provide in part that post-trial release should not be granted unless it is found that there is no substantial risk of flight and "that the appellant is not likely to commit a serious crime, intimidate witnesses or otherwise interfere with the administration of justice." ABA Criminal Justice Standards, *supra; accord*, ABA Criminal Justice Standard 21–2.5 (2d Ed., Approved Draft 1978). The Manual for Courts-Martial adds a broader standard to the effect that the convening authority should consider all relevant factors in each case and grant or deny deferment based upon the best interests of the accused and the service. Manual for Courts-Martial, *supra*, par. 88f at p. 17–10.[4] In this connection, additional considerations not applicable to civilian society apply to the release of military personnel in active service pending appeal of court-martial convictions. See, *e. g., United States v. Corley*, 5 M.J. 558, 565–66 (A.C.M.R.), *pet. denied*, 6 M.J. 122 (C.M.A.1978).

■ The burden of demonstrating eligibility for deferment rests with the appellant. *United States v. Brownd, supra*, 6 M.J. at 340; *United States v. Thomas*, 7 M.J. 763, 768 (A.C.M.R.1979). To reverse for "an abuse of discretion involves far more than a difference in . . . opinion. . . . The challenged action must . . . be found to be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous' in order to be invalidated on appeal." *United States v. Glenn*, 154 U.S.App.D.C. 61, 66, 473 F.2d 191, 196 (D.C. Cir. 1972); *see United States v. Freeman*, 15 U.S.C. M.A. 126, 128–29, 35 C.M.R. 98, 100–01 (1964); *United States v. Evans*, 1 U.S.C.

---

**3.** Even if a limiting instruction were required, its absence produced no prejudice. Except as part of an implied threat to Harris possession of the shotgun was not shown to be criminal. It scarcely could be viewed as bearing on the issue of intent to damage property. Furthermore, the court members acquitted appellant of the assault offenses to which it pertained.

**4.** The Congress appears to have laid to rest any notion that the *Manual* provisions are beyond

the purview of the President's regulatory authority conferred by Article 36, Uniform Code of Military Justice, 10 U.S.C. § 836 (1976). *Compare Corley v. Thurman*, 3 M.J. 192, 195–96 n. 3 (C.M.A.1977) (mem.) (Perry, J., dissenting), *with* Article 36(a), UCMJ, *supra*, as amended by sec. 801(b), Department of Defense Authorization Act, 1980, Pub.L. 96–107, 93 Stat. 803, 811.

M.A. 541, 544, 4 C.M.R. 133, 136 (1952); *cf. Truong Dinh Hung v. United States*, 439 U.S. 1326, 99 S.Ct. 16, 58 L.Ed.2d 33 (1978) (Brennan, J., in chambers) (post-trial bail decision below entitled to great deference).

On 25 June 1979, appellant, who had been transferred to the United States Disciplinary Barracks, Fort Leavenworth, Kansas, applied to the general court-martial convening authority there for deferment of confinement.

His stated basis for requesting deferment was to resolve "financial and family problems that had arisen" due to his inability to contribute adequate "financial support and personal support" on such matters as car payments, and insurance and household payments. He stated that "divorce is inevitable unless I am able to resolve these matters." [5] He also asserted that "the military" would benefit by his return to duty in his career field and by his ability "to help others not to make the same [mistakes he had made]."

Appellant's proposed plan was "to take a possible ten to fourteen days leave in order to take care of family problems," then to return to duty, preferably at an installation such as Fort Stewart, Georgia, nearer his Florida home.[6]

While appellant did not expressly contend that reversal of his conviction or reduction of his sentence on appeal was likely, he implied so by attaching to his application

the trial defense counsel's rebuttal to the staff judge advocate's review, which attacks in some detail several alleged errors in the trial and initial review of the case.

█ His application was referred to the convening authority's staff judge advocate, who prepared a written advice in the format partially illustrated (with seeming approval) in *United States v. Corley*, 5 M.J. 558, 566–67, Appendix A (A.C.M.R.), *pet. denied*, 6 M.J. 122 (C.M.A.1978), including the advice set forth in paragraph 5 of that document.[7] As in *Corley*, the staff judge advocate concluded that, in consideration of all of the relevant factors, granting the request for deferment was not warranted.[8] The convening authority agreed. An appeal taken to The Judge Advocate General was denied on 29 August 1979. *See* Army Regulation 27–10, Legal Services: Military Justice, par. 2–30*b* (1977).

The convening authority was not misadvised as to the standards to be used in exercising his discretion. *Cf. Corley v. Thurman*, 3 M.J. 192, 198 n. 8 (C.M.A.1977) (mem.) (Perry, J., dissenting). Nor did his concurrence in the staff judge advocate's analysis amount to a mere "baldfaced pronunciamento." *See United States v. Brownd*, 6 M.J. 338, 340 (C.M.A.1979). As in *Corley*, we are satisfied that full and fair consideration was given to appellant's application for deferment and that the ultimate denial was not an abuse of the convening authority's discretion.

5. He had, however, testified at his trial that he already was in the process of obtaining a divorce and intended to marry Linda.

6. Appellant may have overlooked the fact that, although the adjudged forfeitures of pay would cease to apply if deferment were granted, he nevertheless would be serving in pay grade E–1, rather than his former pay grade E–5, and favorable personnel actions (such as automatic promotion to pay grade E–2) would remain barred. Additionally, his transfer from Fort Leavenworth to a post nearer home was not a necessary consequence of granting deferment and might hinge on different factors.

7. Although paragraph 5 of the staff judge advocate's advice makes no reference to *Brownd*, it nevertheless sets forth correct standards. The compatibility of the Bail Reform Act standards, ABA Criminal Justice Standards, and the prescription set forth in the Manual for Courts-

Martial was noted in Judge Perry's dissent in *Corley v. Thurman*, 3 M.J. 192, 195–97 (C.M.A. 1977) (mem.); *see also United States v. Brownd, supra*, 6 M.J. at 340–41 (Perry, J., concurring).

8. The staff judge advocate correctly discerned the nonmeritorious nature of the trial and review errors relied upon in support of appellant's belief that his appeal might be successful. Appropriately, appellate counsel did not even raise those errors for our consideration. Nevertheless, we detect in this case, as in some others we have seen, an unwise tendency to rely too heavily on the improbability of success on appeal as a basis for denying deferment. That is an important factor to be considered. However, as *Brownd* illustrates, it may not be the determinative one.

## V

Appellant also complains that the multiple-page forms with instructions provided to prisoners at the Disciplinary Barracks for the purpose of applying for deferment are inadequate because they do not expressly elicit information as to those matters held relevant in *Brownd* (*i. e.*, those mentioned in the ABA Criminal Justice Standards). Perhaps the form (which was adopted before the *Brownd* decision) could be improved, but there is no restriction on including any information or argument the prisoner and his counsel wish to include, and the paragraph headings seem well-designed to elicit significant information that otherwise might be overlooked. Having found that the denial of appellant's application was not an abuse of discretion, we decline to rule on the adequacy of a form whose use is not shown to have been commanded or limited.

## VI

 The error supplementally assigned stems from similarities between the offense of assault with a means likely to produce grievous bodily harm and the offense of reckless driving resulting in personal injury. In this case, the means likely to produce bodily harm was a motor vehicle. *See United States v. Mason*, 3 C.M.R. 718 (A.F.B.R.1952). The offense does not require a specific intent and may be committed through culpable negligence (of the same degree as that involved in reckless driving and involuntary manslaughter). Manual for Courts-Martial, *supra*, par. 207a at p. 28–61; *United States v. Redding*, 14 U.S.C.M.A. 242, 244–45, 34 C.M.R. 22, 24–25 (1963). For either offense, the maximum punishment includes a dishonorable discharge and forfeiture of all pay and allowances. However, confinement for the aggravated assault may be for three years, whereas the maximum confinement for reckless driving, even when personal injury has resulted, is but one year. Manual for Courts-Martial, *supra*, par. 127c, Table of Maximum Punishments at pp. 25–13, 25–14.

In this case, both offenses were treated as lesser included offenses of the charged assault with intent to murder Specialist Harris (so, too, was the more severe lesser included offense of assault with the intentional infliction of grievous bodily harm). Appellant pleaded guilty to the offense of reckless driving resulting in personal injury. Although the military judge found that the plea was provident, he entered no findings, preferring (with the consent of counsel) to defer that until the court members could consider the question as to guilt of the charged offense and, if necessary, each of the lesser included offenses. As we know, the court members acquitted Yoakum of assault with intent to commit murder and also of the next major included offense, assault with the intentional infliction of grievous bodily harm.

While no request or complaint was raised at the trial concerning the judge's instructions, appellant now contends that the judge erred in instructing the court members that they could find him guilty of assault with a means likely to produce grievous bodily harm by being culpably negligent. He reasons that, if he were culpably negligent, then he committed only the offense of reckless driving, to which he had pleaded guilty, and that it was a denial of equal protection of the laws to subject him to the greater punishment for the same conduct. *See United States v. Courtney*, 1 M.J. 438 (C.M.A.1976); *but see United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

If appellant's theory were correct, no defendant could be convicted of assault using a motor vehicle as a deadly weapon on a culpable negligence theory in any jurisdiction that also had a reckless driving statute. We have not discovered that to be the law in any State. *See, e. g., McCullers v. State*, 206 So.2d 30 (Fla.App.1968); *Lott v. State*, 92 Okl.Cr. 324, 223 P.2d 147 (1950); *see also People v. Goolsby*, 284 Mich. 375, 279 N.W. 867 (Mich.1938). Nor is there any support for his view in military law. *United States v. Thompson*, 11 C.M.R. 762, 767 (A.F.B.R. 1953); *see United States v. Mason*, 3 C.M.R. 718 (A.F.B.R.1952).

The fallacy in appellant's theory lies in the fact that assault with a means likely to produce grievous bodily harm, even when alleged to have been committed with an automobile, is an entirely different offense from reckless driving. [9] The purpose of Article 111 has been termed "regulatory in nature." Besides the avoidance of injury to others, it looks to the avoidance of property damage and other consequences that might flow from the presence of reckless drivers on roads traveled by the public. *United States v. Beene*, 4 U.S.C.M.A. 177, 181, 15 C.M.R. 177, 181 (1954); *United States v. Mabry*, 2 M.J. 412, 414–15 (A.C.M.R.1975). Assault with a dangerous weapon, on the other hand, is a crime malum in se, and involves the likelihood that great bodily harm or death will be inflicted. *United States v. Bush*, 47 C.M.R. 532, 534 (C.G.C.M.R.1973). Whether a motor vehicle was used as a means likely to produce grievous bodily harm involves factors that may differ markedly from those involved in the question whether it was driven recklessly. *Compare United States v. Vigil*, 3 U.S.C.M.A. 474, 476–77, 13 C.M.R. 30, 32–33 (1953), *with United States v. Lawrence*, 18 C.M.R. 855, 857–58 (A.F.B.R.1955).

In view of the foregoing, there was no error in the military judge's instructions and no denial of equal protection.[10]

## VII

The final matter to be considered is appellant's contention that his sentence is too severe and should be reduced to confinement at hard labor for six months, forfeiture of $100.00 pay per month for six months, and reduction to the lowest enlisted grade. See Article 66(c), Uniform Code of Military Justice, *supra*. Disregarding the fact that appellant already had served six months at the time the pleading was filed, without there yet having been the opportunity for the Government to reply, and that the confinement portion of his sentence has been ameliorated by a grant of clemency,[11] we find no grounds for relief from the sentence arrived at by the court members on the basis of the evidence and arguments they heard, and approved by the convening authority.

The findings of guilty and the sentence are affirmed.

Judge WATKINS and Judge LEWIS concur.

---

9. The fact that injury resulted does not make similar offenses of the aggravated assault and reckless driving. Conviction of assault with a dangerous weapon does not depend upon whether injury was actually inflicted. Manual for Courts-Martial, *supra*, par. 207c(1) at p. 28–64. Similarly, the pleading and proof that personal injury resulted from reckless driving was not an element of that offense, but solely a matter in aggravation of the punishment. *United States v. Bernard*, 10 C.M.R. 718, 723 (A.F.B.R.1953); *see* Article 111, Uniform Code of Military Justice, 10 U.S.C. § 911 (1976); Manual for Courts-Martial, *supra*, par. 127c, Table of Maximum Punishments, at p. 25–13; *cf; State v. Seymour*, 379 N.E.2d 535 (Ind.App. 1978) (Indiana statute).

10. In view of the outcome of the trial, we need not consider the possibility that appellant could properly have been convicted of both aggravated assault and reckless driving. *See United States v. Harrison*, 4 M.J. 332, 333 (C.M.A. 1978), citing *United States v. Beene*, 4 U.S.C.M.A. 177, 15 C.M.R. 177 (1954) (accused convicted of both involuntary manslaughter and drunken driving under "separate societal norm" concept).

11. In August 1979, the Army Clemency and Parole Board determined that appellant should be released from the Disciplinary Barracks and transferred to the Army Retraining Brigade at Fort Riley, Kansas, effective 15 February 1980.