UNITED STATES, Appellee,

v.

Private (E–1) Joseph A. TURNER SSN
434–17–8615, United States
Army, Appellant.

SPCM 15590.

U. S. Army Court of Military Review.

13 May 1981.

Colonel Edward S. Adamkewicz, Jr.,
JAGC, Lieutenant Colonel Jerome E. Kelly,
JAGC, and Captain John D. Martin, JAGC,
were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major Ted B.
Borek, JAGC, Major John T. Meixell, JAGC,
and Captain Robert D. Higginbotham,
JAGC, were on the pleadings for appellee.

Before RECTOR, CARNE and O'DON-NELL Appellate Military Judges.

## OPINION OF THE COURT

CARNE, Senior Judge:

In consonance with his pleas the appellant was convicted by a military judge sitting as a special court-martial of three specifications of unlawful entry, one specification of assault consummated by a battery upon a military policeman in the execution of his duties and two specifications of larceny in violation of Articles 134, 128, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 934, 928 and 921, respectively.[1] The appellant's sentence as adjudged and approved by the convening authority provides for a bad-conduct discharge, confinement at hard labor for four months and forfeiture of $334.00 pay per month for four months.

The appellant now asserts that his plea of guilty to the offense of assault consummated by a battery was improvident because of an inconsistent statement he made during the sentencing proceedings. We do not agree.

During the *Care*[2] inquiry the military judge correctly advised the appellant as to the elements of the offense in question, explained the meaning of the term "in the execution of military police duties" and explained that an assault is an attempt or offer with unlawful force or violence to do bodily harm to another and that an assault in which bodily harm is inflicted is called a battery. The appellant expressly acknowledged that he understood all of the foregoing. Thereafter, in order to establish the factual basis for the plea the following dialogue took place:

MJ: Do you understand that that act must be done without legal justification or excuse and without the lawful consent of the victim, is that clear to you?

ACC: Yes, Your Honor.

MJ: Did PFC Gillespie consent to you striking him with the rake? .

ACC: Did he consent, Your Honor?

MJ: Yes.

ACC: No, Your Honor.

MJ: Now, tell me, where did this incident occur on the eighth of August?

ACC: At Apartment 1, Building 339, at apartment 1B.

MJ: Okay. And did PFC Gillespie discover you then outside the window of that apartment?

ACC: Yes, Your Honor.

MJ: And what happened at that time?

ACC: At the time, Your Honor, I was at the air conditioner, putting it back in the window and he came around and he told me to halt and he said he was an MP and so—

MJ: He told you he was an MP?

ACC: Yes, Your Honor.

MJ: And he told you to halt, you heard him tell—

ACC: No, no he said come out, excuse me, Your Honor, he said come out of the bushes, that was his exact words, come out of the bushes.

MJ: Okay. Now did you hear him say that he was an MP?

ACC: Yes, Your Honor.

MJ: How was he dressed?

ACC: He was in civilian clothes, I think, Your Honor, I'm not sure.

MJ: Okay. Was he carrying a weapon of any kind?

ACC: I can't recall, Your Honor.

MJ: He wasn't in a regular MP uniform then?

ACC: No, Your Honor.

MJ: Did you know that he was an MP?

ACC: Before he told me?

1. The trial judge determined that the appellant's pleas of guilty to Charge II and its Specification alleging attempted unlawful entry were improvident. Accordingly, pleas and findings of not guilty were entered thereto.

2. *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

MJ: No, in other words at the time that he told you to come out of the bushes, did he also tell you that he was an MP?

ACC: Yes, Your Honor.

MJ: Okay. And you heard him tell you that?

ACC: Yes, Your Honor.

MJ: You don't recall if he had any weapon or anything?

ACC: No, Your Honor.

MJ: Did he say that you were apprehended?

ACC: No, Your Honor, he just said, come out of the bushes that he wanted to talk to me.

MJ: Okay. and was that when you threw, or hit him with the rake?

ACC: No, Your Honor, I hit him with the rake after he told me he wanted to talk to me and that's when I started to run and I just kind of tossed the rake.

MJ: Okay. Now did you toss the rake in his direction?

ACC: Yes, Your Honor.

MJ: Okay. Did he see the rake coming, do you think, do you believe?

ACC: I, I don't know, Your Honor.

MJ: But you agree that the rake did hit him?

ACC: Yes, Your Honor, it hit him.

MJ: Okay. Do you recall if it struck him on the arm?

ACC: Yes, Your Honor.

MJ: Now, what happened after that. Did he catch you, when you ran away did he catch you?

ACC: No, Your Honor, I proceeded to run into the parking lot and then around the building. Then I ran across the street and I ran into the woods and by that time, by the time I had got out of the woods, the, on the other street, the MPs had surrounded me and apprehended me.

MJ: Okay. Do you admit then that on the eighth of August 1980, at Fort Leavenworth, Kansas, that you did bodily harm to Private First Class Gillespie?

ACC: Yes, Your Honor.

MJ: And do you admit that you did so by striking him on the arm with a rake?

ACC: Yes, Your Honor.

MJ: And do you admit that that was done with unlawful force or violence?

ACC: Yes, Your Honor.

MJ: Now, with regard to that matter, was he coming at you at the time you threw the rake?

ACC: Yes, Your Honor, he was in front of me and there was another one behind me, I can't recall his name, they was trying to cut off my route of retreat.

MJ: Are you satisfied then that you did not throw the rake in self defense?

ACC: Yes, Your Honor.

MJ: Now are you satisfied that Private First Class Gillespie was a person who then had and was in the execution of military police duties?

ACC: Yes, Your Honor.

MJ: And, did you know at the time you threw the rake that he had and was in the execution of such duties?

ACC: Yes, Your Honor.

In addition, in order to establish that there was a knowing, intelligent, and conscious waiver before accepting the pleas the following colloquy is set forth in the record:

MJ: Now, do you have any questions about any of the offenses that we have discussed?

ACC: No, I don't, Your Honor.

. . . .

MJ: Do you feel that you have had enough time and opportunity to discuss your case with Captain Davis?

ACC: Yes, Your Honor.

MJ: And, Captain Davis, are you satisfied that you have had enough time with your client?

DC: Yes, Your Honor.

MJ: Private Turner, are you satisfied that Captain Davis's advice is in your best interest?

ACC: Yes, Your Honor.

MJ: And after discussing the matter with him and having his personal and professional opinion in the matter, did you conclude in your mind that the best course of action for you to follow was to plead guilty to these offenses?

ACC: Yes, Your Honor.

MJ: Is your plea of guilty voluntary? By that I mean, are you pleading guilty of your own free will?

ACC: Yes, Your Honor.

MJ: Has anyone tried to force you to plead guilty?

ACC: No, Your Honor.

MJ: Is there a pretrial agreement in this case?

DC: There is none, Your Honor.

MJ: I would say at this point that based upon my discussion with the accused, I believe that a plea of guilty would be provident as to all of the Charges and Specifications except for Charge II and its Specification.

I advise you, Private Turner, that although you believe that you are guilty, you have a legal right to plead not guilty and to require the government to prove its case against you, if it can, by legal and competent evidence beyond a reasonable doubt. If you should plead not guilty, you would be presumed by law to be innocent and that presumption would follow you throughout the trial. In other words, it is only by the introduction of legal and competent evidence beyond a reasonable doubt that the government can overcome the presumption of innocence in your favor. Is that clear to you?

ACC: Yes, Your Honor.

MJ: And do you still desire to proceed with trial as a plea of guilty?

ACC: Yes, Your Honor.

MJ: I find that, except as to Charge II, the accused has knowingly, intelligently and consciously waived his rights against self-incrimination, to a trial of the facts by a court-martial, to be confronted by the witnesses against him, further that he is in fact guilty and his plea of guilty is accept-

ed. Now, Private Turner, while accepting your plea of guilty I advise you that you may request to withdraw your plea at any time prior to the announcement of sentence and if you have a good reason for such a request, it will be granted. . . .

Following the trial judge's pronouncement of the findings, the pre-sentencing procedures ensued during which the appellant testified in extenuation and mitigation. Therein he furnished an explanation and expressed remorse for his offenses. During cross-examination he admitted that the offenses occurred while he was assigned to a local parolee unit on a post clean-up detail from the United States Disciplinary Barracks. He also admitted that this was a position of trust and that he should be punished for his violations. Thereafter, on redirect examination the defense asked the following question: "One of the things that I forgot to address. When you tossed this rake at Private Gillespie, were you (sic), did you throw that rake to hurt Private Gillespie or just to effect your escape?" The appellant responded "I didn't throw it to hit him at all, sir. I just threw it to get it out of my hands." In further response to other questions the appellant stated he was pretty scared and threw it so he could run. The appellant now asserts that this testimony revealing he had no intent or desire to strike the victim was inconsistent with his plea.

 Assault consummated by a battery is a general intent crime and "may be committed either intentionally or through culpable negligence, but the distinction between attempt and offer which is made in a simple assault is not necessary in battery because of the actual unlawful infliction of bodily harm." Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, p. 585. *United States v. Redding*, 14 U.S.C.M.A. 242, 34 C.M.R. 22 (1963); *United States v. Head*, 46 C.M.R. 709, 712 (A.C.M. R.1972); *United States v. Pittman*, 42 C.M.R. 720, 722 (A.C.M.R.1970). Accordingly, even though the appellant just prior to sentencing stated that he had no intent or desire to strike the victim, this self-serving

rationalization is of no consequence in a general intent crime where no affirmative defense was raised. This is particularly so where the appellant had earlier admitted without any equivocation that when directed by the military policeman to come out of the bushes he tossed the rake in the direction of the victim, a known military policeman in the execution of his duties, who was coming toward the appellant in an attempt to cut off his route of retreat and that the rake struck the military policeman on the arm with unlawful force or violence.[3]

■ For a number of years the Court of Military Appeals has held that to trigger the provisions of Article 45, Code,[4] it is necessary "that the accused set up something that is truly inconsistent with his plea.... [The principle that rejection of the plea or reversal must follow from the] mere possibility of conflict between a guilty plea and the accused's statements, ... should be no longer followed.... [T]he record must contain some reasonable ground for finding an inconsistency...." *United States v. Logan*, 22 U.S.C.M.A. 349, at 350–51, 47 C.M.R. 1, at 2–3 (1973). *See also United States v. Schocken*, 1 M.J. 511 (A.F.C.M.R.1975) and *United States v.*

*Young*, 2 M.J. 472 (A.C.M.R.1975). Under the factual circumstances set forth in the record and the reasonable inferences drawn from his overall statements, we are unpersuaded that the appellant's declaration as to his motive for throwing the rake rises to the level of inconsistency requiring further inquiry by the military judge pursuant to Article 45, Uniform Code of Military Justice. Accordingly, we hold that the appellant did not raise any reasonable matters which would negate his plea of guilty nor did he raise any possible defenses or any other matters which were inconsistent with his plea. Since the inquiry of the appellant indicates not only that he believes he is guilty but also that the factual circumstances as revealed by him objectively support that plea, we find the appellant's plea was provident. *United States v. Davenport*, 9 M.J. 364 (C.M.A.1980); *United States v. Hebert*, 1 M.J. 84, 86 (C.M.A.1975).

The findings of guilty and the sentence are AFFIRMED.

Chief Judge RECTOR concurs.

O'DONNELL, Judge, dissenting:

[T]he record of trial [in a guilty plea case] must reflect not only that the elements of

---

3. Although not necessary to our disposition of this case we note from the testimony of one of the two military policemen at the Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832, investigation that when the appellant was initially requested to come out of the bushes, the rake was leaning up against the wall of the building. Specialist Folgum saw the rake move and at the same time the appellant came rushing out of the bushes with the rake in his hands and took an immediate right running towards PFC Gillespie. Gillespie tried to stop the appellant at which time the appellant threw the rake with both hands into Gillespie's face. At this time the appellant and Gillespie were about three feet apart. Gillespie blocked the rake with his hands and lost his balance in so doing. It has long been held that this Court may consider matters contained in the entire record, including the Article 32 investigation, in determining the providency of appellant's plea of guilty. *United States v. Young*, 2 M.J. 472, 474 n.1 (A.C.M.R.1975); *United States v. Stouffer*, 2 M.J. 528, 530 (A.C.M.R.1976); *United States v. Johnson*, 49 C.M.R. 467 (A.C.M.R. 1974), *certified and affirmed on other grounds*, 23 U.S.C.M.A. 416, 50 C.M.R. 320, 1 M.J. 36 (1975); *United States v. McKee*, 42 C.M.R. 797

(A.C.M.R.1970); *United States v. Williams*, 15 U.S.C.M.A. 65, 35 C.M.R. 37 (1964). In view of the evidence adduced and since the individual defense counsel who represented the appellant at trial also represented the appellant at the Article 32 investigation, we find that his question, which is the subject of the error assigned, somewhat disturbing. This is particularly significant since the evidence shows that the appellant did not have the rake in his hand until after he initiated his attempt to flee and that the rake was specifically used as a blocking device. Therefore it would appear that the true facts were known before the parties went to trial and that the plea was responsive to the truth and in accordance with the actual facts, whereas the question in issue is somewhat doubtful and the response appears to be contrived. *See* Judge Cook's opinion in *United States v. Johnson, supra*, holding that a guilty plea, when entered, must be responsive to the truth and in accordance with the actual facts.

4. Article 45, Uniform Code of Military Justice, 10 U.S.C. § 845, requires rejection of a plea of guilty if the accused later sets up matters inconsistent with his plea.

each offense charged have been explained to the accused but also that the military trial judge ... has questioned the accused about what he did or did not do, and what he intended (where this is pertinent), to make clear the basis for a determination by the military trial judge ... whether the act or the omissions of the accused constitute the offense or offenses to which he is pleading guilty.

In promulgating this requirement in *United States v. Care,* 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969), the Court of Military Appeals fortified the codal requirement that an accused not enter a plea of guilty "improvidently or through a lack of understanding of its meaning and effect." Article 45, Uniform Code of Military Justice, 10 U.S.C. § 845.

In the instant case, the appellant pleaded guilty to assault consummated by a battery. A battery is the unlawful application of force to the person of another. This application of force may be accomplished intentionally or through culpable negligence with no intent to injure. *See United States v. Redding,* 14 U.S.C.M.A. 242, 34 C.M.R. 22 (1963).

The military judge in conducting the *Care* inquiry did not delineate between the two kinds of mental elements that may constitute a battery. Instead, he in effect proceeded on the theory that the battery was of the intentional variety. The appellant in explaining the incident during the *Care* inquiry did not admit that he intended to strike the policeman. His responses to the judge's questions were more consistent with a theory of negligence than one of intent.[1] Later, during the sentencing portion of the trial, when the appellant stated that he did not throw the rake to hit the policeman but only to accomplish his escape, he effectively denied an intent to injure and thereby set up matter inconsistent with a theory of an intentional battery.[2] At this point, if not sooner, the military judge should have inquired further, first by explaining to the appellant the difference between the two types of batteries. If the appellant persisted in his denial of an intent to injure, the military judge should then have determined whether the appellant admitted sufficient facts to support guilt on the basis of culpable negligence. If the appellant would admit neither, the military judge should have rejected the plea of guilty and entered one of not guilty, as required by Article 45 of the Code. As the inconsistency was never resolved, and as the applicable theories of criminality were never explained to the appellant, his plea was improvident.[3]

One further matter requires comment. In footnote 3, the majority considered testimony adduced at the Article 32 investigation to bolster its conclusion that the plea was provident and to assail the *bona fides* of the trial defense counsel. This, in my opinion, was inappropriate. In the first place, matters outside the record may not be considered by appellate courts in determining the providence of a guilty plea. *United States v. Davenport,* 9 M.J. 364 (C.M.A.1980). The majority in the instant case attempts to avoid the prohibition by treating the Article 32 investigation as a part of the record. The essence of *Davenport,* however, is that "providence of a tendered plea of guilty is a matter to be established one way or another at trial." *Id.,* at 367.

The leading case on this point before *Davenport* was *United States v. Johnson,* 1 M.J. 36 (C.M.A.1975), cited by the majority. That decision, however, stands for the proposition that Article 32 proceedings may be

1. For example: "I hit him with the rake after he told me he wanted to talk to me and that's when I started to run and I just kind of tossed the rake."

2. Even though the intent to injure is a general intent, it is a requisite mental element. If there is no such intent, the only remaining theory of criminality is one based on culpable negligence.

3. As noted by the majority, the appellant did acknowledge by an affirmative response that the striking of the policeman was done with unlawful force or violence. This, however, was no more than a statement of a legal conclusion without the benefit of an explanation of the legal principle involved.

examined, not directly to determine the providence of a guilty plea, but to preclude a miscarriage of justice or a fraud on the court. To the extent the other cases cited by the majority are to the contrary, they are inconsistent with *Davenport.*

The other use to which the majority put the Article 32 investigation is disturbing. I find nothing wrong with the defense counsel's attempt to show that the appellant's mental state was one of culpable negligence rather than an intent to injure. True, the effect of the question and answer (at least as I view it) was to render the plea improvident. But the fault lies not with the defense counsel but in the failure of the military judge to explain to the appellant the two theories of criminality. The harsh criticism leveled at the defense counsel in my opinion is unwarranted.