UNITED STATES, Appellee,

v.

Staff Sergeant Chrissandra V. MARBURY, United States Army, Appellant.

ARMY 9700371.

U.S. Army Court of Criminal Appeals.

10 Feb. 1999.

For Appellant: Lieutenant Colonel Michael L. Walters, JA; Major Holly S.G. Coffey, JA; Captain T. Michael Guiffre, JA (on brief).

For Appellee: Lieutenant Colonel Eugene R. Milhizer, JA; Major Lyle D. Jentzer, JA (on brief).

Before TOOMEY, Senior Judge, CARTER and NOVAK, Appellate Military Judges.

## OPINION OF THE COURT

CARTER, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to her pleas, of aggravated assault in which grievous bodily harm was intentionally inflicted in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge and reduction to Private E1. This case is before the court for automatic review under Article 66, UCMJ.

Appellant's assignments of error[1] allege, inter alia, that the evidence is factually and legally insufficient to prove beyond a reasonable doubt: (1) that appellant possessed the specific intent to inflict grievous bodily harm; (2) that she did not act in self-defense; and (3) that the injury was not the result of an accident. We agree as to the lack of factual sufficiency to prove the specific intent to inflict grievous bodily harm.

### Facts

This case involves heavy drinking and irresponsible conduct by several senior noncommissioned officers (NCOs). The following facts are generally not in dispute.

---

[1]
I.
THE MILITARY JUDGE ERRONEOUSLY INSTRUCTED THE PANEL THAT IT COULD NOT RECOMMEND CLEMENCY.
II.
THE EVIDENCE IS FACTUALLY AND LEGALLY INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT POSSESSED THE SPECIFIC INTENT TO INFLICT GRIEVOUS BODILY HARM, THAT APPELLANT DID NOT ACT IN SELF-DEFENSE AND THAT THE INJURY WAS NOT THE RESULT OF AN ACCIDENT.
III.
THE MILITARY JUDGE ERRONEOUSLY INSTRUCTED THE PANEL THAT IT COULD ONLY ADJUDGE A DISHONORABLE DISCHARGE OR A BAD-CONDUCT DISCHARGE.
IV.
APPELLANT'S SENTENCE IS INAPPROPRIATELY SEVERE.

Appellant lived in a "hooch" on Camp Kyle, Korea, which included four private rooms and an adjoining common area. Appellant was convicted of intentionally stabbing Sergeant First Class (SFC) Pitts in his chest with a knife during a farewell party held in appellant's hooch.

At the party, approximately a dozen NCOs were eating, drinking significant amounts of alcohol, listening to music, and socializing. At some point, appellant left the common area and went into her room to get ready to go to a club for the remainder of the evening with some of her guests. Sergeant First Class Pitts, an expert in the martial art of Tae Kwon Do, followed appellant into her room and told her that she should not go out because she had consumed too much alcohol. After an exchange of words, SFC Pitts hit appellant in the mouth. Appellant left her room and asked SFC Beanum, one of her guests, for help in evicting SFC Pitts from her room. Sergeant First Class Beanum was 5'11" tall, weighed 245 pounds, and was a roommate of SFC Pitts in another hooch. Instead of helping appellant evict SFC Pitts from her room, SFC Beanum made some sort of joke or crude comment about appellant and everyone laughed at her.

Disgusted and upset, appellant said that she would take care of the situation herself, grabbed a nearby kitchen knife (with a four-inch handle and a six-inch blade), and returned to her room. Staff Sergeant (SSG) Parker testified that he saw appellant carry a knife back into her room but that he didn't take it seriously because she was not carrying the knife in an aggressive manner. After "a while went by," SSGs Parker and McNeil heard "bumping" noises coming from appellant's room. Staff Sergeant McNeil entered appellant's room and saw that SFC Pitts had straddled appellant and had her pinned on her back on the bed. Sergeant First Class Pitts held appellant's wrists above her head while appellant clutched the knife in her right hand. Appellant asked for help in getting SFC Pitts off of her. Other NCOs then entered the room and helped get SFC Pitts off appellant. After appellant and SFC Pitts were separated and standing, SFC Pitts forcefully kicked appellant in the chest, lift-ing her off the ground and sending her flying across the room. Sergeant First Class Pitts then stormed out of the building and collapsed outside from a stab wound.

Medical evidence established that SFC Pitts suffered a "sucking chest wound" near his left nipple that penetrated his chest cavity but did not puncture his lung. The emergency room doctor testified that SFC Pitts' laceration was only one to two centimeters and "it seemed to be a glancing, relatively superficial wound over the rib." Exploratory surgery verified that the knife did not cut SFC Pitts' lungs or heart. In a stipulation of expected testimony, one of SFC Pitts' surgeons stated that he found it highly unusual that SFC Pitts would not discuss the circumstances of his injury and that he did not behave like an innocent victim.

The government gave SFC Pitts testimonial immunity and called him as a witness. SFC Pitts testified that he was drinking on the night in question and did not know how he was cut but believed it was an accident, stating, "I didn't see her come at me with no knife." He stated that he did not remember appellant having a knife in her possession that night or how he was cut.

Appellant testified that she "had a few drinks" that evening and was upset when everyone ignored her request for help in evicting SFC Pitts. Appellant testified she was afraid of SFC Pitts because he had already hit her and she knew he had martial arts training. She grabbed the knife and intended to scare SFC Pitts out of her room with it. Appellant stated that she entered her room with the knife, walked past SFC Pitts, and positioned herself in the rear of her room. Appellant testified that she then turned towards SFC Pitts while holding the knife in her right hand, midway up her torso, with the blade pointing outward. Standing five feet in front of a seated SFC Pitts, appellant told him, "[G]et out of my room now." Appellant explained her actions stating, "[N]ormal folks when they see a knife in a woman's hand, they'll leave." Appellant stated that she never threatened, stabbed, or intended to hurt SFC Pitts. Appellant testified that SFC Pitts, instead of going away from her to the door, came towards her and

told her to give him the knife. They struggled and fell on the bed with her on her back and SFC Pitts on top of her holding her hands above her head. Appellant testified that SSG McNeil then entered the room and pulled SFC Pitts off of appellant. Appellant concluded that SFC Pitts must have been cut when they fell on the bed.

The military judge instructed the members on the charged [2] and lesser-included offenses and the defenses of accident and self-defense.[3] After deliberating for over two hours on findings, the members requested further instruction on reconsideration voting procedures and the element of specific intent to inflict grievous bodily harm. The military judge repeated the pertinent instructions. After further deliberation, the members convicted appellant of the charged offense.

The members interrupted their sentencing deliberations twice to ask questions concerning administrative discharges and forfeiture of pay by operation of law. Prior to announcing the sentence, the president of the court-martial panel made the following comment:

> Sergeant Marbury, it was very difficult for us to come to a decision, as you could well tell by the time we took and the questions we asked. Our concern and dilemma was not only with your actions, but with the apparent disregard of your friends and other NCOs to take care of you and to ensure that this does not happen. And that factored very heavily in our decision on what sentence you should be given. You acted what appeared to be out of a moment of anger. You did a very very

bad thing, but there were 13 other people in that room that carry the burden of your sentence. And I and the senior NCOs on this panel are very very ashamed of their actions, and wish that we could adjudicate them also.

## Defense of Accident

Accident is a complete defense that excuses an accused from all criminal liability if found to exist. *United States v. Curry*, 38 M.J. 77, 80 n. 6 (C.M.A.1993); *United States v. Ferguson*, 15 M.J. 12, 17 (C.M.A.1983); Rule for Courts–Martial 916(f) [hereinafter R.C.M.]. Appellant asserts that the evidence in her case does not prove beyond a reasonable doubt that the "injury [to SFC Pitts] was not the result of an accident." This statement erroneously implies that an unintended injury is synonymous with the defense of accident. It is not. *Curry*, 38 M.J. at 80 n. 5; *United States v. Pemberton*, 16 U.S.C.M.A. 83, 36 C.M.R. 239, 240, 1966 WL 4452 (1966); *United States v. Redding*, 14 U.S.C.M.A. 242, 34 C.M.R. 22, 26, 1963 WL 4752 (1963). Similarly, the testimony of both appellant and SFC Pitts that the stabbing was an accident is not controlling. *Ferguson*, 15 M.J. at 20; *Redding*, 34 C.M.R. at 26; *United States v. Leach*, 22 M.J. 738, 740 (N.M.C.M.R.1986).

Case law has developed three prongs for the defense of accident in the military.[4] First, the accused must have been engaged in lawful conduct at the time of the injury. *Ferguson*, 15 M.J. at 17; *United States v. Sandoval*, 4 U.S.C.M.A. 61, 67, 15 C.M.R. 61, 67, 1954 WL 2252 (1954). An

2. The specification charged that appellant did "commit an assault upon Sergeant First Class Ralph D. Pitts by stabbing him in the chest with a knife and did thereby intentionally inflict grievous bodily harm upon him, to wit: a deep chest wound and a collapsed lung."

3. The military judge also instructed the members on the related issues of appellant's right to stand her ground in her own room and to defend her personal property. *See* Dep't of Army Pam. 27–9, Legal Services: Military Judges' Benchbook, paras. 5–2–6, note 2, and 5–7 (30 Sept. 1996) [hereinafter Benchbook]. Although appellant did not argue either of these issues on appeal, we considered both and find that neither of them warrants relief under the facts of this case.

4. The defense of accident to charged criminal misconduct has existed since the common law:

> If any accidental mischief happens to follow from the performance of a *lawful* act, the party stands excused from all guilt. But if a man be doing anything *unlawful*, and a consequence ensues which he did not foresee or intend, as the death of a man or the like, his want of foresight shall be no excuse; for, being guilty of one offense in doing antecedently what is in itself unlawful, he is criminally guilty of whatever consequence may follow the first misbehavior.

W. Winthrop, *Military Law and Precedents* 291 n. 61 (2d ed. 1920 Reprint) (quoting 4 W. Blackstone, *Commentaries* 26, 27).

accused who does not satisfy the first prong of a defense of accident may still escape criminal liability if his unlawful act was not the proximate cause of the charged injury. *See United States v. Small,* 45 C.M.R. 700, 703, 1972 WL 14285 (A.C.M.R.1972).

■ Second, the accused must have behaved in a lawful manner with due care and without simple negligence. *Ferguson,* 15 M.J. at 17; *United States v. Tucker,* 17 U.S.C.M.A. 551, 38 C.M.R. 349, 353, 1968 WL 5418 (1968). The defense of accident does not apply if a negligent act or omission caused the death or injury. *Leach,* 22 M.J. at 739–40; R.C.M. 916(f) discussion.

■ Third, the act must be done without unlawful intent, i.e., it was unforeseeable and unintentional. *Ferguson,* 15 M.J. at 17; *United States v. Femmer,* 14 U.S.C.M.A. 358, 34 C.M.R. 138, 140, 1964 WL 4981 (1964). The defense of accident requires an unexpected act, not the unexpected consequence of a deliberate act. *Pemberton,* 36 C.M.R. at 240; *Sandoval,* 15 C.M.R. at 68. The defense of accident does not excuse a deliberate act towards another without any intent to inflict injury if the natural and direct consequences of the act result in injury. *Pemberton,* 36 C.M.R. at 240.

These three prongs are encompassed in the current military rule for the defense of accident: "A death, injury, or other event which occurs as the *unintentional and unexpected result* [third prong] of *doing a lawful act* [first prong] in a *lawful manner* [second prong] is an accident and excusable." R.C.M. 916(f) (emphasis added). *See also* Benchbook, para. 5–4. Once the defense has placed the defense of accident in issue by some evidence, the burden shifts to the prosecution to prove beyond a reasonable doubt that the defense of accident did not exist. R.C.M. 916(b). All three prongs must exist for there to be a defense of accident.

■ We find under Article 66(c), UCMJ, that this record establishes beyond a reasonable doubt that the government proved that the defense of accident did not apply to appellant. We find that none of the three prongs of the defense of accident exist in this case.

Concerning the first prong, we find that appellant was engaged in unlawful conduct at the time of SFC Pitts' injury. Appellant intentionally engaged in an "offer" type assault by showing SFC Pitts the knife, thereby intending to frighten SFC Pitts into complying with her demand to leave her room. *See Manual for Courts–Martial, United States* (1995 ed.), Part IV, para. 54c(1)(b)(ii) [hereinafter MCM, 1995].

We also find that the second prong of the defense of accident was violated when appellant took the knife back into her room to confront SFC Pitts. Simple negligence defeats an accident defense. Simple negligence is the absence of due care for the safety of others that a reasonably prudent person would have exercised under the same or similar circumstances. MCM, 1995, para. 85c(2). Appellant, having already been assaulted by SFC Pitts, knew that he was intoxicated and combative. Appellant's decision to challenge SFC Pitts with a large knife in an attempt to scare him out of her room after she had withdrawn to safety was a clear failure to exercise that degree of due care that a reasonably prudent person would exercise under the circumstances.

Finally, we find that appellant's conduct failed the third prong of the defense of accident. It was not unforeseeable or unexpected that a struggle over the knife would ensue and that one or both parties would be injured. One does not challenge a combative drunk, skilled in martial arts training, with a large knife and reasonably expect him to run away.

### Self-defense

■ We find that the facts of record easily prove beyond a reasonable doubt that the right of self-defense did not excuse appellant's misconduct. R.C.M. 916(e).[5] The defense of self-defense is generally not available to an aggressor or to one who provokes an attack. R.C.M. 916(e)(4). Appellant suc-

---

5. As with the defense of accident, once appellant raised self-defense by presenting some evidence, the government had the burden of proving beyond a reasonable doubt that the defense of self-defense did not exist. R.C.M. 916(b).

cessfully retreated from her room after SFC Pitts hit her in the face. After unsuccessfully seeking assistance from her fellow NCOs, she could have either called the military police or stayed in the common area until SFC Pitts came out of her room. Instead, appellant grabbed a weapon, reentered her room, and started a confrontation by threatening SFC Pitts with the knife. Appellant did not testify that SFC Pitts assaulted or threatened her after she reentered her room. Under these circumstances, we find under Article 66c, UCMJ, that appellant lost the right of self-defense when she acted as the aggressor with the knife. R.C.M. 916(e)(4).

### Findings of Fact

Congress entrusted our court with an "awesome, plenary, *de novo*" responsibility to affirm only those findings of guilty

> as it finds correct in law *and fact* and *determines, on the basis on the entire record, should be approved.* In considering the record, *it may weigh the evidence,* judge the credibility of witnesses, and *determine controverted questions of fact,* recognizing that the trial court saw and heard the witnesses.

*United States v. Cole,* 31 M.J. 270, 272 (C.M.A.1990)(quoting UCMJ art. 66(c)). Exercising this power and reviewing the record as a whole, we make the following findings of fact under Article 66(c), UCMJ:

■ 1. Sergeant First Class Pitts' stab wound, which penetrated his chest cavity near his heart and required emergency surgery to evaluate and repair, constituted grievous bodily harm. *See* MCM, 1995, para. 54c(4)(a)(iii); *United States v. Spearman,* 23 U.S.C.M.A. 31, 33, 48 C.M.R. 405, 407, 1974 WL 13829 (1974) (whether injury constitutes grievous bodily harm is a question of fact);

and *United States v. Boasmond,* 48 M.J. 912, 914 (N.M.Ct.Crim.App.1998).

2. Appellant intentionally pointed a large knife towards SFC Pitts and demanded that he leave her room immediately. Appellant's intent was that SFC Pitts would see the knife in her hand, become scared, and leave. Instead of leaving appellant's room, SFC Pitts attempted to disarm appellant. During the ensuing struggle, SFC Pitts was stabbed in the chest.

### Factual Sufficiency of Aggravated Assault

■ The standard of review for factual sufficiency is whether, after weighing the evidence and making allowances for not having personally seen the witnesses, we are ourselves convinced that an accused is guilty beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987).

■ Appellant was convicted of assault in which grievous bodily harm was intentionally inflicted, a specific intent crime. Applying our findings of fact, along with the uncontested facts, to the elements of proof, we cannot affirm appellant's conviction for intentionally inflicting grievous harm. We recognize that the specific intent to inflict grievous bodily harm may be proven by circumstantial evidence. "When grievous bodily harm has been inflicted by means of intentionally using force *in a manner likely to achieve that result,* it may be inferred that grievous bodily harm was intended." MCM, 1995, para. 54c(4)(b)(ii) (emphasis added). During closing argument, trial counsel argued that appellant and SFC Pitts both lied about what happened with the knife. Maybe they did, but this record of trial [6] does not persuade us, beyond a reasonable doubt, that appellant committed the charged offense. The direct testimonial evidence from appellant and SFC Pitts creates sufficient reasonable doubt in

---

6. We are hindered to some degree in evaluating the government's case by the irregularities in the record of trial. In several places witnesses demonstrated things with their hands or pointed to locations on diagrams that were not fully described for the record. The replicated diagrams contained in the record of trial do not contain all of the markings made on the original diagrams used by the witnesses in the trial. Appellate Exhibits II and III, briefs concerning a defense

motion requesting a crime scene visit, are completely missing. Appellant does not challenge the sufficiency of the record of trial. Likewise, considering the record of trial as a whole and the applicable law, we find it to be a complete and substantially verbatim record. *See generally* UCMJ art. 54; R.C.M. 1103 and discussion thereto; *United States v. Gray,* 7 M.J. 296 (C.M.A. 1979); and *United States v. Seal,* 38 M.J. 659 (A.C.M.R.1993).

our minds as to appellant's specific intent to inflict grievous bodily harm that overcomes any permissible inference of specific intent.

■ However, we find beyond a reasonable doubt that this record does prove appellant's guilt, by culpably negligent conduct, of the lesser-included offense of assault with a dangerous weapon. The elements of assault with a dangerous weapon in this case are that: (1) appellant offered to do bodily harm to SFC Pitts; (2) appellant did so with a dangerous weapon, to wit, a large knife; (3) the offer of bodily harm was done with unlawful force or violence; and (4) the weapon was used in a manner likely to produce grievous bodily harm. MCM, 1995, para. 54b(4).

An "offer" type assault resulting in a battery may be committed by a culpably negligent act in which the offer to do bodily harm is consummated by the infliction of that harm. MCM, 1995, para. 54c(1)(b)(ii) and 54c(2)(a). Culpable negligence is a greater degree of carelessness than simple negligence and includes a negligent act accompanied by a culpable disregard for the foreseeable consequences of that act to others. MCM, 1995, para. 44(c)(2)(a)(i). Appellant's brandishing a large knife in front of an intoxicated martial arts expert in close quarters was a culpable disregard for the foreseeable consequences of that act, despite appellant's avowed intent not to actually harm SFC Pitts. *Leach*, 22 M.J. at 739.

### Decision

■ We hold that the evidence is factually insufficient to support appellant's conviction for intentionally inflicting grievous bodily harm, but is legally and factually sufficient to support the lesser-included offense of assault with a dangerous weapon. UCMJ art. 66(c); *Jackson v. Virginia*, 443 U.S. 307, 319,

99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Turner*, 25 M.J. at 325. We may reassess the sentence, rather than order a rehearing, only if we can reliably determine what sentence would have been imposed at the original trial if the error had not occurred. *United States v. Davis*, 48 M.J. 494, 495 (1998); *United States v. Taylor*, 47 M.J. 322, 325 (1997); *United States v. Sales*, 22 M.J. 305, 307 (C.M.A.1986). Applying this standard to this record, we are compelled to order a rehearing on the sentence.

Because of our resolution of appellant's second assignment of error, we need not address her other three assignments of error or the matters she asserted pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982).

The court affirms only so much of the findings of guilty of the Charge and its Specification as finds that appellant committed an aggravated assault with a dangerous weapon in violation of Article 128, UCMJ. The sentence is set aside. The same or a different convening authority may order a rehearing on the sentence. If the convening authority determines that a rehearing on the sentence is impracticable, he may approve a sentence of no punishment. *See* R.C.M. 1107(e)(1)(C)(iii).

Senior Judge TOOMEY and Judge NOVAK concur.