UNITED STATES, Appellee,

v.

Chrissandra V. MARBURY, Staff
Sergeant, U.S. Army,
Appellant.

No. 99–0401.
Crim.App. No. 9700371.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 28, 2001.

Decided Sept. 28, 2001.

SULLIVAN, J., delivered the opinion of the Court, in which CRAWFORD, C.J., and EFFRON and BAKER, JJ., joined. GIERKE, J., filed a dissenting opinion.

For Appellant: *Captain Arun J. Thomas* (argued); *Colonel Adele H. Odegard, Lieutenant Colonel David A. Mayfield,* and *Major Mary M. McCord* (on brief).

For Appellee: *Captain Jennifer A. Parker* (argued); *Colonel David L. Hayden, Lieutenant Colonel Edith M. Rob,* and *Major Anthony P. Nicastro* (on brief).

Judge SULLIVAN delivered the opinion of the Court.

During the early months of 1997, appellant was tried by a general court-martial composed of officer and enlisted members at Camp Casey, Korea. Contrary to her pleas, she was found guilty of an aggravated assault in which grievous bodily harm was intentionally inflicted, in violation of Article 128(b)(2), Uniform Code of Military Justice, 10 USC

§ 928(b)(2). On March 6, 1997, she was sentenced to a bad-conduct discharge and reduction to the lowest enlisted grade, and on June 20, 1997, the convening authority approved this sentence. On February 10, 1999, the Court of Criminal Appeals affirmed a lesser-included offense of aggravated assault with a dangerous weapon, a violation of Article 128(b)(1), UCMJ, and authorized a sentence rehearing if not impracticable. 50 MJ 526. On February 11, 2000, the convening authority approved the findings of guilty to the lesser-included offense, determined a sentence rehearing was impracticable and approved a sentence of no punishment. The Court of Criminal Appeals affirmed this action on April 13, 2000, in an unpublished opinion.

On November 28, 2000, this Court granted review on the following questions of law:

I. WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED BY FAILING TO APPLY AND FOLLOW A WELL–ESTABLISHED PRINCIPLE OF LAW THAT THE OCCUPANT OF A DWELLING MAY USE REASONABLE FORCE TO EJECT A TRESPASSER.

II. WHETHER THE ARMY COURT OF CRIMINAL APPEALS CONDUCTED A MEANINGFUL REVIEW BY FINDING APPELLANT GUILTY OF THE LESSER–INCLUDED OFFENSE OF AGGRAVATED ASSAULT WITH A DANGEROUS WEAPON WHERE THE AFFIRMATIVE DEFENSE OF DEFENSE OF PROPERTY APPLIES.

III. WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT THE INJURY WAS NOT THE RESULT OF AN ACCIDENT.

We resolve these questions against appellant and affirm.

The Court of Criminal Appeals in its first decision in this case found the following facts:

This case involves heavy drinking and irresponsible conduct by several senior noncommissioned officers (NCOs). The following facts are generally not in dispute.

Appellant lived in a "hooch" on Camp Kyle, Korea, which included four private rooms and an adjoining common area. Appellant was convicted of intentionally stabbing Sergeant First Class (SFC) Pitts in his chest with a knife during a farewell party held in appellant's hooch.

At the party, approximately a dozen NCOs were eating, drinking significant amounts of alcohol, listening to music, and socializing. At some point, appellant left the common area and went into her room to get ready to go to a club for the remainder of the evening with some of her guests. Sergeant First Class Pitts, an expert in the martial art of Tae Kwon Do, followed appellant into her room and told her that she should not go out because she had consumed too much alcohol. After an exchange of words, SFC Pitts hit appellant in the mouth. Appellant left her room and asked SFC Beanum, one of her guests, for help evicting SFC Pitts from her room. Sergeant First Class Beanum was 5'11" tall, weighed 245 pounds, and was a roommate of SFC Pitts in another hooch. Instead of helping appellant evict SFC Pitts from her room, SFC Beanum made some sort of joke or crude comment about appellant and everyone laughed at her.

*Disgusted and upset, appellant said that she would take care of the situation herself, grabbed a nearby kitchen knife (with a four-inch handle and a six-inch blade), and returned to her room.* Staff Sergeant (SSG) Parker testified that he saw appellant carry a knife back into her room but that he didn't take it seriously because she was not carrying the knife in an aggressive manner. After "a while went by," SSGs Parker and McNeil heard "bumping" noises coming from appellant's room. Staff Sergeant McNeil entered appellant's room and saw that SFC Pitts had straddled appellant and had her pinned on her back on the bed. Sergeant First Class Pitts held appellant's wrists above her head while appellant clutched the knife in her right hand. Appellant asked for help in getting SFC Pitts off of her. Other NCOs

then entered the room and helped get SFC Pitts off appellant. After appellant and SFC Pitts were separated and standing, SFC Pitts forcefully kicked appellant in the chest, lifting her off the ground and sending her flying across the room. Sergeant First Class Pitts then stormed out of the building and collapsed outside from a stab wound.

Medical evidence established that SFC Pitts suffered a "sucking chest wound" near his left nipple that penetrated his chest cavity but did not puncture his lung. The emergency room doctor testified that SFC Pitts' laceration was only one to two centimeters and "it seemed to be a glancing, relatively superficial wound over the rib." Exploratory surgery verified that the knife did not cut SFC Pitts' lungs or heart. In a stipulation of expected testimony, one of SFC Pitts' surgeons stated that he found it highly unusual that SFC Pitts would not discuss the circumstances of his injury and that he did not behave like an innocent victim.

The government gave SFC Pitts testimonial immunity and called him as a witness. SFC Pitts testified that he was drinking on the night in question and did not know how he was cut but believed it was an accident, stating, "I didn't see her come at me with no knife." He stated that he did not remember appellant having a knife in her possession that night or how he was cut.

Appellant testified that she "had a few drinks" that evening and was upset when everyone ignored her request for help in evicting SFC Pitts. Appellant testified she was afraid of SFC Pitts because he had already hit her and she knew he had martial arts training. She grabbed the knife and intended to scare SFC Pitts out of her room with it. *Appellant stated that she entered her room with the knife, walked past SFC Pitts, and positioned herself in the rear of her room. Appellant testified that she then turned towards SFC Pitts while holding the knife in her right hand, midway up her torso, with the blade pointing outward. Standing five feet in front*

*of a seated SFC Pitts, appellant told him,* "[G]et out of my room now." Appellant explained her actions stating, "[N]ormal folks when they see a knife in a woman's hand, they'll leave." Appellant stated that she never threatened, stabbed, or intended to hurt SFC Pitts. Appellant testified that SFC Pitts, instead of going away from her to the door, came towards her and told her to give him the knife. They struggled and fell on the bed with her on her back and SFC Pitts on top of her holding her hands above her head. Appellant testified that SSG McNeil then entered the room and pulled SFC Pitts off of appellant. Appellant concluded that SFC Pitts must have been cut when they fell on the bed.

The military judge instructed the members on the charged[2] and lesser-included offenses and the defenses of accident and self-defense.[3] After deliberating for over two hours on findings, the members requested further instruction on reconsideration voting procedures and the element of specific intent to inflict grievous bodily harm. The military judge repeated the pertinent instructions. After further deliberation, the members convicted appellant of the charged offense.

———

[2] The specification charged that appellant did "commit an assault upon Sergeant First Class Ralph D. Pitts by stabbing him in the chest with a knife and did thereby intentionally inflict grievous bodily harm upon him, to wit: ·a deep chest wound and a collapsed lung."

[3] The military judge also instructed the members on the related issues of appellant's right to stand her ground in her own room and to defend her personal property. *See* Dep't of Army Pam. 27–9, Legal Services: Military Judges' Benchbook, paras. 5–2–6, note 2, and 5–7 (30 Sept. 1996) [hereinafter Benchbook]. Although appellant did not argue either of these issues on appeal, we considered both and find that neither of them warrants relief under the facts of this case.

50 MJ at 527–29 (emphasis added).

———  ——  ———

As a starting point, we note that the appellate court below set aside appellant's conviction for aggravated assault for stabbing SFC Pitts and intentionally inflicting grievous bodily harm upon him, *i.e.*, a deep chest

wound and a collapsed lung. Article 128(b)(2), UCMJ.[1] It found as fact that appellant did not intend to inflict this grievous bodily harm upon SFC Pitts. However, it affirmed a finding of guilty to a lesser form of aggravated assault, *i.e.*, assault with a dangerous weapon based on her "negligent conduct" in "brandishing a large knife in front of an intoxicated martial arts expert in close quarters. . . ." 50 MJ at 530, 532. It characterized appellant's crime as "an 'offer-type' assault" (*see* para. 54c(1)(b)(ii), Manual for Courts–Martial, United States (1995 ed.)) resulting in a battery. *See* para. 54c(2)(a).[2]

### Assigned Issues I & II

Paragraph 54c(1)(b)(ii) defines an offer-type assault as follows:

> (ii) *Offer type assault. An "offer" type assault is an unlawful demonstration of violence, either by an intentional or by a culpably negligent act or omission, which creates in the mind of another a reasonable apprehension of receiving immediate bodily harm.* Specific intent to inflict bodily harm is not required.

(Emphasis added.)

Appellant first contends that the Court of Criminal Appeals erred in finding her conduct in threatening SFC Pitts with a knife was unlawful because she could legally use reasonable force to eject a trespasser. Second, she contends that the appellate court below erred in finding her threatening conduct was unlawful because she could lawfully use reasonable force to protect her property.[3] She asserts that her use of a knife to threaten SFC Pitts was reasonable force under the circumstances of this case.

■ It is well established that a service-member has a legal right to eject a trespasser from his or her military bedroom (*see United States v. Richey*, 20 MJ 251, 253 n. 2 (CMA 1985); *United States v. Regalado*, 13 USCMA 480, 482, 33 CMR 12, 14 (1963)) and a legal right to protect his or her personal property. *See* para. 5–7, n.3, Military Judges' Benchbook (Dept. of the Army Pamphlet 27–9 (30 Sept. 1996)).[4] However, it is equally well established that these legal rights are not unlimited, and they must be exercised reasonably. *Id.* Reasonableness in this context means that reasonable force must be used, *i.e.*, force that is *reasonably necessary to eject the trespasser or otherwise protect the property. See United States v. Regalado, supra* at 483, 33 C.M.R. 12. *See*

---

1. Article 128, UCMJ, states:
   **§ 928.  Art. 128.  Assault**
   (a) *Any person* subject to this chapter *who attempts or offers with unlawful force or violence to do bodily harm to another person*, whether or not the attempt or offer is consummated, *is guilty of assault* and shall be punished as a court-martial may direct.
   (b) *Any person subject to this chapter who—*
   (1) *commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm;* or
   (2) *commits an assault and intentionally inflicts grievous bodily harm with or without a weapon;*
   *is guilty of aggravated assault* and shall be punished as a court-martial may direct.

2. The infliction of bodily harm, *i.e.*, a battery, is treated as a sentence enhancer in the Manual and is not necessary for conviction of the crime of assault under Article 128, UCMJ. *See United States v. Bonano–Torres*, 31 MJ 175, 180 (CMA 1990), and paras. 54e(1) and (2), Manual, *supra*.

3. Appellant did not ask the military judge to instruct the members that her right to eject trespassers from her military bedroom was a defense in this case. (R. 350) She did request in regard to the defense of self-defense that the members be told that she had no duty to retreat in her

military home. This request was later withdrawn (R. 351) and a more generic instruction concerning her right to stand her ground was given. (R. 357–58) The military judge later gave a defense-of-property instruction (R. 369) extending to "her real and personal property" (R. 369–371), and no objection was lodged by the defense based on *United States v. Richey*, 20 MJ 251 (CMA 1985), and *United States v. Regalado*, 13 USCMA 480, 33 CMR 12 (1963). Assuming error in the military judge's failure to distinguish between defense of personal property and defense of home (*see* 1 W. La Fave and A. Scott, *Substantive Criminal Law* § 5.9(a) and (b) (1986)), we conclude that it was not plain error and such error was forfeited in this case.

4. Note 3: *"Ejecting someone from the premises."* A person, who is lawfully in possession or in charge of premises, and who requests another to leave whom he or she has a right to request to leave, may lawfully use as much force as is reasonably necessary to remove the person, after allowing a reasonable time for the person to leave. The person who refuses to leave after being asked to do so, becomes a trespasser and the trespasser may not resist if only reasonable force is employed in ejecting him or her. *United States v. Regalado*, 33 CMR 12 (CMA 1963).

*generally* 1 W. La Fave & A. Scott, *Substantive Criminal Law* § 5.9(a) and (b) (1986).

■ Turning to appellant's first two arguments, we note that the Court of Criminal Appeals did not hold that appellant had no legal right to eject a trespasser from her military bedroom or legal right to defend her personal property. Instead, it held that a soldier has no legal right to do so unreasonably.[5] We agree.

In this regard, we further note that the lower court, based on evidence in this case, characterized appellant as an *"aggressor"* who lost her right to self-defense when she reentered the room with a knife rather than calling the military police or waiting outside until SFC Pitts left her room. It further characterized her conduct as *negligent* because

> [a]ppellant, having already been assaulted by SFC Pitts, knew that he was intoxicated and combative. Appellant's decision to challenge SFC Pitts with a large knife in an attempt to scare him out of her room after she had withdrawn to safety was a clear failure to exercise that degree of due care that a reasonably prudent person would exercise under the circumstances.

50 MJ at 530. *See United States v. Berry*, 6 USCMA 638, 646, 20 CMR 354, 362 (1956) (trespasser holding an open knife in the hand within reasonable striking distance from occupant of military bedroom at the time of an impending affray is guilty of assault); *United States v. Leach*, 22 MJ 738, 739 (NMCMR 1986) (brandishing an open knife in the direction of another at close quarters constitutes assault by culpable negligence, even when injury occurred in the course of "horseplay"). It finally held that she did so *recklessly* under the unique circumstances of her case. *United States v. Marbury*, *supra* at 532. We hold that the lower court's finding that appellant's conduct was unreasonable and, accordingly, not within her legal rights as noted above is supported by evidence in this record of trial.

With respect to the reasonableness question, some additional comment is warranted on the particular military context of this incident. The record showed a disagreement between two intoxicated soldiers over one soldier's decision to go out to a club after drinking with her fellow soldiers in their quarters. It is also undisputed that appellant left her room in order to remove herself from the threat of continued physical attack by SFC Pitts. Finally, SFC Pitts remained in her military bedroom contrary to her wishes, and appellant tried unsuccessfully to have other members of the party, including her military superiors, remove SFC Pitts from that location.

Nevertheless, the record shows that appellant could, but did not, call military police to have SFC Pitts removed from her military quarters or arrested. This was some evidence from which the Court of Criminal Appeals (and the members) could find beyond a reasonable doubt that her immediate return to her military bedroom brandishing a knife for the purpose of ejecting her assailant was excessive or unreasonable force, hence unlawful conduct. *See United States v. Gibson*, 43 MJ 343, 346 (1995). Its holding on this point is in general accord with civilian law. *See generally* 1 La Fave & A. Scott, *supra* at § 5.9(a) ("One whose lawful possession of property is threatened by the unlawful conduct of another, *and who has no time to resort to the law for its protection*, may take reasonable steps, including the use of force, to 'prevent or terminate' such interference with property.") (emphasis added); *see also* § 5.9(b) (reasonably-necessary standard for measuring permissible force).

## Assigned Issue III

■ Appellant also contends that the evidence in her case was "legally insufficient to prove beyond a reasonable doubt that the injury [to SFC Pitts] was not the result of an

---

5. The lower court said:
> The military judge also instructed the members on the related issues of appellant's right to stand her ground in her own room and to defend her personal property. *See* Dep't of Army Pam. 27–9, Legal Services: Military Judges' Benchbook, paras. 5–2–6, note 2, and 5–7 (30 Sept. 1996) [hereinafter Benchbook]. Although appellant did not argue either of these issues on appeal, we considered both and find that neither of them warrants relief *under the facts of this case.*
> 50 MJ at 529 n.3 (emphasis added).

accident." [6] Final Brief at 14. She asserts that

> SFC Pitts's injury was the result of an accident, not of culpable negligence. Accident is a defense to the offense of assault with a dangerous weapon. To affirm that appellant committed the offense of assault with a dangerous weapon, the defense of accident cannot exist. Rule for Court–Martial [hereinafter RCM] 916(b), Manual for Courts–Martial [hereinafter MCM], 1995. The government has the burden of proving beyond a reasonable doubt that accident does not apply, once raised by the appellant. *United States v. Marbury*, 50 MJ 526 (Army Ct.Crim.App.1999). The government failed to prove beyond a reasonable doubt that the accident defense did not exist in this case.

*Id.* at 15. We disagree.

The appellate court below discussed and rejected the defense of accident in this case with respect to the charge for which she was found guilty by the members. The originally charged offense was an aggravated assault *in which grievous bodily harm was intentionally inflicted*, in violation of Article 128(b)(2), UCMJ. The Court of Criminal Appeals, however, set aside appellant's conviction for that offense and affirmed appellant's conviction for aggravated assault with a dangerous weapon, in violation of Article 128(b)(1), UCMJ. The defense of accident was not mentioned by the appellate court below with respect to this conviction.

We note that assault with a dangerous weapon does not require that the prosecution prove that the person assaulted suffered bodily harm. Para. 54b(4)(a), Manual, *supra; cf.* para. 54b(4)(b). Here, the Court of Criminal Appeals specifically found that appellant committed an offer-type assault with a dan-

gerous weapon and delineated the required elements of proof. It said:

> However, we find beyond a reasonable doubt that this record does prove appellant's guilt, by culpably negligent conduct, of the lesser-included offense of assault with a dangerous weapon. The elements of assault with a dangerous weapon in this case are that: (1) appellant offered to do bodily harm to SFC Pitts; (2) appellant did so with a dangerous weapon, to wit, a large knife; (3) the offer of bodily harm was done with unlawful force or violence; and (4) the weapon was used in a manner likely to produce grievous bodily harm. MCM, 1995, para. 54b(4).

50 MJ at 532. In this context, the critical question is whether appellant's threatening conduct with her knife created "in the mind [of SFC Pitts] a reasonable apprehension of receiving immediate bodily harm," (para. 54c(1)(b)(ii)), not whether it caused SFC Pitts injuries. *See United States v. Milton*, 46 MJ 317, 319 (1997). Accordingly, appellant's argument that SFC Pitts's injury was an accident does not raise a viable defense to his conviction of assault with a dangerous weapon.[7]

We also note that there was no other evidence in this record raising the defense of accident to the offense of assault with a dangerous weapon. No evidence was admitted that appellant unintentionally or accidently reentered her bedroom and threatened SFC Pitts with a knife. On the contrary, all the evidence suggests that appellant did so intentionally, to scare SFC Pitts and secure his removal from her room. Moreover, although SFC Pitts denied seeing any knife being wielded, the appellate court below was not bound to accept this testimony as determinative of the reasonable-apprehension question. *See*

---

6. *"Accident*—a death, injury, or other event which occurs as the unintentional and unexpected result of doing a lawful act in a lawful manner is an accident and excusable." RCM 916(f), Manual, *supra.*

7. Assuming the defense of accidental injury was relevant to appellant's conviction for assault with a dangerous weapon under Article 128(b)(1), UCMJ, there was sufficient evidence in this rec-

ord for the appellate court below to reject it. *See United States v. Redding*, 14 USCMA 242, 246, 34 CMR 22, 26 (1963); *United States v. Gibson*, 43 MJ 343, 346 (1995). Evidence was admitted showing appellant acted negligently in returning to her bedroom to confront a dangerous assailant after securing safety outside her room. Evidence was also admitted showing appellant acted with culpable disregard for her own safety, SFC Pitts's safety, and the other soldiers in her hooch.

*United States v. Rounds*, 30 MJ 76, 80 (CMA 1990). Appellant testified that she clearly brandished her knife in SFC Pitts's face in an effort to scare him into leaving her room, and he then jumped her. 50 MJ at 528. The Court of Criminal Appeals was entitled to draw an inference from this testimony that a reasonable apprehension of bodily harm was created in SFC Pitts by appellant's conduct. *See United States v. Smith*, 4 USCMA 41, 43, 15 CMR 41 (1954). Accordingly, the conviction of this lesser offense must be affirmed.

The decision of the United States Army Court of Criminal Appeals is affirmed.

GIERKE, Judge (dissenting):

In my view, the victim in this case was appellant, not Sergeant First Class (SFC) Pitts. Appellant was attacked when she unsuccessfully attempted to persuade a drunken, violent trespasser to leave her bedroom. I would set aside the conviction and dismiss the charge.

I believe that appellant took reasonable measures in an unsuccessful effort to persuade a trespasser to leave her bedroom. During a barracks party that involved heavy drinking, SFC Pitts went into appellant's bedroom, uninvited, while she was getting dressed and grooming herself in preparation for leaving the barracks. When SFC Pitts first entered appellant's bedroom, he was at best an interloper. When appellant told him to leave her bedroom and he refused, he became a trespasser.

SFC Pitts is a martial arts expert. The record does not reflect SFC Pitts's height and weight, but it does reflect that appellant is only 65 inches tall and weighs 125 pounds.

They began arguing after SFC Pitts went into appellant's bedroom and told her that she was too drunk to leave the barracks. The court below found that, during the argument, SFC Pitts hit appellant in the mouth. 50 MJ at 528. In the ensuing altercation, they both fell backwards onto her bed, with SFC Pitts on top of appellant. She bit him, pushed him away, and ran out of her room. She asked another senior noncommissioned officer (NCO), SFC Beanum, to help her remove SFC Pitts from her room. Instead, SFC Beanum made a crude comment and the other NCOs who were present laughed at appellant.

Appellant obtained a steak knife from the common kitchen, returned to her room, walked past SFC Pitts to the back corner of the room, stood "four or five feet away," held the knife "nonchalantly" in front of her, and told SFC Pitts to "get out of my room now." One of the NCOs in the common area saw appellant carrying the knife, "but he didn't take it seriously because she was not carrying the knife in an aggressive manner." *Id.* SFC Pitts had a clear path to the door and no need to take the knife from appellant. However, instead of leaving the room, SFC Pitts demanded that appellant give him the knife, and then he attacked her in an effort to take it from her. *Id.* They struggled and appellant fell backwards onto the bed, with SFC Pitts on top of her, holding her hands above her head. After two other NCOs separated SFC Pitts and appellant and they both stood up, SFC Pitts delivered a martial arts kick to appellant's chest, lifting her off her feet and knocking her across the room. Sometime during this struggle, SFC Pitts suffered a "glancing, relatively superficial wound over the rib."

SFC Pitts was given testimonial immunity and testified for the prosecution. He denied hitting appellant in the mouth. He testified that another NCO told him that he had kicked appellant. His memory of the events was vague. He did not know how he was cut. He testified that his injury was "an accident," but he did not know exactly how it happened. He testified, "I didn't see Sergeant Marbury come at me with no knife." After asserting that he considered appellant his friend and expressing his understanding that she might go to jail, he testified, "I wouldn't want no one to go to jail for something they probably didn't do."

It is well settled that "reasonable force may be used to eject a trespasser." *United States v. Richey*, 20 MJ 251, 252 n. 2 (CMA 1985), citing *United States v. Regalado*, 13 USCMA 480, 482, 33 CMR 12, 14 (1963).

"When one with the right to do so has ordered another from the premises, the latter has no right to refuse or resist." *Regalado,* 13 USCMA at 483, 33 CMR at 15. It is also well settled that "a greater degree of force may be used where the person sought to be ejected violently resists or assaults" the rightful owner or occupant. *Id.* at 482, 33 CMR at 15, quoting 4 Am.Jur., Assault and Battery § 77. Finally, it is well settled in the law of self-defense that a defender "is not limited to the exercise of precisely identical force or degree thereof as is asserted against him." *United States v. Acosta–Vargas,* 13 USCMA 388, 393, 32 CMR 388, 393 (1962). A defender may lawfully defend herself by offering to use deadly force, without intending to actually use it, if she reasonably believes that the attacker is about to inflict *any* bodily harm, not necessarily death or grievous bodily harm. *See* RCM 916(e)(2), Manual for Courts–Martial, United States (2000 ed.) * (defender may offer, but not actually apply or attempt to apply, force likely to cause death or grievous bodily harm in order to deter assailant from inflicting bodily harm); *see also* 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 5.7 at 651 (1986), citing *United States v. Black,* 692 F.2d 314 (4th Cir.1982). A person has no duty to retreat from his or her home. *Id.* at 650.

Applying the above principles, I conclude that *no rational factfinder could find beyond a reasonable doubt that appellant acted unreasonably* in her unsuccessful effort to persuade SFC Pitts to leave her room. While summoning the military police might have been a "reasonable" course of action, it was not the only reasonable course of action. Appellant had already been assaulted once by SFC Pitts and verbally abused by the other NCOs in the area when she asked for their help. The circumstances were such that appellant could reasonably expect that an attempt to summon the military police would have subjected her to further verbal and physical abuse.

The court below and the majority of this Court appear to take the curious view that, because the trespasser assaulted her, appellant lost her right to make a reasonable show of force in an effort to persuade the trespasser to leave her bedroom. The court below also took the position, which this Court appears to uphold, that appellant was negligent because she "challenged" SFC Pitts. 50 MJ at 530. Appellant did not challenge SFC Pitts; SFC Pitts challenged appellant.

In my opinion, appellant was entitled to display a knife in an effort to persuade SFC Pitts to leave. Her first attempt to persuade him failed when he attacked and overpowered her. I believe that, under the circumstances, it was reasonable for her to protect herself before trying again to persuade him to leave her bedroom. She acted in a reasonable manner, not endangering SFC Pitts and giving him a clear path to leave her bedroom.

The reasonableness of appellant's conduct is demonstrated by SFC Pitts's response to her request that he leave her bedroom. His response was totally inconsistent with "reasonable apprehension of receiving immediate bodily harm," an essential element of an offer-type assault. Para. 54c(1)(b)(ii), Manual, *supra.* He responded to appellant's request by attacking her instead of leaving. The evidence overwhelmingly demonstrates SFC Pitts's confidence that his physical strength and martial arts prowess would protect him from bodily harm. The NCOs who observed appellant with the knife did not take it seriously because she was not carrying the knife in an aggressive manner. In my opinion, no reasonable factfinder could find beyond a reasonable doubt that SFC Pitts was in "reasonable apprehension of receiving immediate bodily harm." *Cf. United States v. Gibson,* 43 MJ 343, 346 (1995) (aggravated assault by culpable negligence established by terrified reactions of nearby soldiers).

I believe that appellant's conviction was a gross injustice, contrary to the law and the facts. Accordingly, I dissent.

* Cited Manual provisions are identical to the ones in effect at the time of appellant's court-martial.