# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist JERROD D. GADDIS**
**United States Army, Appellant**

ARMY 20120157

Headquarters, Fort Riley
Jeffery R. Nance, Military Judge
Lieutenant Colonel Daniel G. Brookhart, Staff Judge Advocate (pretrial)
Lieutenant Colonel John A. Hamner, Staff Judge Advocate (post-trial)

For Appellant: Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jaired D. Stallard, JA; Captain Matthew R. Laird, JA (on brief).

For Appellee: Lieutenant Colonel James L. Varley, JA; Major Katherine S. Gowel, JA; Major Alison L. Gregoire, JA (on brief).

31 January 2014

---------------------------------
SUMMARY DISPOSITION
---------------------------------

HAIGHT, Judge:

A military judge sitting as a special court-martial convicted appellant, in accordance with his plea, of failure to obey a lawful general regulation and, contrary to his plea, of an aggravated assault by offer with a loaded firearm, in violation of Articles 92 and 128 of the Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 928 (2006) [hereinafter UCMJ].[1] The military judge sentenced appellant to a bad-conduct discharge, confinement for 80 days, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

---

[1] The military judge dismissed a willful disobedience charge under Article 90, UCMJ, and found appellant not guilty of a failure to obey charge under Article 92, UCMJ.

GADDIS – ARMY 20120157

This case is before us for review pursuant to Article 66, UCMJ.  Before this court, appellant alleges a single assignment of error meriting discussion but no relief.  We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and find that they lack merit.

## FACTS

On the evening of 8 May 2011, appellant and Corporal (CPL) KE visited the on-post residence of appellant's good friend, Specialist (SPC) LH.  They played video games and drank alcohol.  It was decided the two guests would stay the night at SPC LH's house.  However, appellant needed to go to his barracks room in order to retrieve appropriate clothes for work the next day.  Because SPC LH considered appellant too intoxicated to drive, he told appellant he would have his girlfriend drive appellant to the barracks.  Appellant and CPL KE waited outside while SPC LH went inside his house to ask this favor from his girlfriend.  Apparently, appellant grew impatient and drove to his barracks with CPL KE, retrieved some clothing, and returned to SPC LH's house.

Upon return, the concerned and protective SPC LH was angry with appellant for driving and confronted appellant in the front yard.  This argument escalated into a physical scuffle with appellant falling to the ground.  Ultimately, appellant walked to the passenger side of his car, got in, locked it, and retrieved a loaded weapon.  Appellant then exited his vehicle, chambered a round as he approached SPC LH, and pointed the pistol at SPC LH's face.  This volatile situation between friends was defused fairly quickly, but by that time the neighbor who witnessed the incident had already called the police.  Based upon the above events and the ensuing investigation, appellant was charged with and convicted of aggravated assault with a dangerous weapon and failure to obey a general regulation by not registering his privately-owned weapon.

At trial, on direct examination, SPC LH, when asked how he felt when he saw the weapon pointed at his face, responded:

> Awkward at first, because I wasn't expecting it.  I wasn't expecting it because, you know, as close as me and him is, I wasn't expecting that to happen.  But I mean at the time, I don't know, I couldn't really tell you how it felt because a million things went through my head.

Although he did not believe it was an appropriate response to their argument for appellant to point a weapon at him, he further testified:

...I felt it was just a night gone bad. That's all it was, because I know him and he's not that type of person and that's not the description I have of him. He's like my brother to me; I'd do anything for him. And I wouldn't do anything to try to get him in trouble. I obviously tried to keep him from getting in trouble, but I mean, it was just a night gone bad.

On cross-examination, when asked by defense counsel if he thought appellant assaulted him, SPC LH responded, "No sir.... I didn't think he was assaulting me, sir. I didn't think he assaulted me at all, sir."

Then, after the presentation of evidence and both closing arguments but before government rebuttal argument, the military judge stated:

Okay. Before you argue, I'm going to recall [SPC LH]. I've got a question I want to ask him. You guys can ask him questions based on mine, if you want to. And then I'll give you both an opportunity to re-argue again based on what he testifies to, briefly re-argue again.

Now, I'm going to ask him a question, he's going to answer my question, and you can re-ask him questions, but there won't be any parsing of words based upon his answer to my question.

Without objection, the military judge recalled SPC LH and the following exchange occurred:

Q. I want to ask you a question. When SPC Gaddis was pointing this weapon at you, at any time during the time he was pointing this weapon at you, did you have any concern that you could be shot and hurt in any way?

A. I mean, yes, sir, because that's just a natural reaction at first, but then the thing about it is, I know him and I don't think he would do that.

Q. Well, if I understand what you are telling me, as you thought about it after initially thinking – having some fear, as you thought about, you said, "Hey, this is my friend, he's not going to hurt me."

A. Yes, sir.

Q. And that took away your fear?

A.  Yes, sir.

Neither side had any follow-on questions.  Both parties presented further closing arguments.  Appellant now asserts a reasonable person would question the military judge's impartiality when he recalled the government's key witness after the close of evidence and presentation of arguments.  In the alternative, appellant claims the military judge abused his discretion by recalling the witness when he did.

## LAW AND DISCUSSION

"The court-martial may act to obtain evidence in addition to that presented by the parties."  Rule for Courts-Martial (R.C.M.) 801(c).  This rule's discussion points out that although a witness may be recalled, a new witness summoned, or other evidence produced, the court-martial, in taking such action, must not depart from an impartial role.  R.C.M. 801(c) discussion.  This equal access and opportunity to obtain evidence is a hallmark of military justice and persists throughout the trial, even to late stages such as after the close of evidence, presentation of closing arguments, or the commencement of deliberations.  *See* UCMJ, art. 46; Military Rule of Evidence 614; R.C.M. 921(b).  *See also United States v. Lampani*, 14 M.J. 22, 25 (C.M.A. 1982).

Accordingly, the military judge clearly had the authority to act as he did.  The question remains whether he abandoned, or appeared to abandon, his impartial role or otherwise abused his discretion in doing so.  We find he did not.

Appellant was charged with committing an assault upon SPC LH by pointing at him with a dangerous weapon, a loaded firearm.  The government pursued conviction under the theory that this was an offer type assault and consequently had to show appellant's unlawful demonstration of violence created in the mind of SPC LH a reasonable apprehension of receiving immediate bodily harm.  *Manual for Courts-Martial*, 2008, pt. IV, ¶ 54.c.(1)(b)(ii).

SPC LH's responses to the government were ambiguous at best and extremely broad.  While never explicitly mentioning fear or apprehension, it could have been inferred that fear was one of the "million things" he experienced on that "night gone bad."  *See United States v. Marbury*, 56 M.J. 12, 17 (C.A.A.F. 2001) (although victim of assault by offer denied seeing any knife being wielded, the appellate court was not bound to accept this testimony as determinative of the reasonable apprehension question).  Ironically and on the other hand, SPC LH's responses to defense counsel were very specific and offered without further elaboration.  His claim that he did not feel "assaulted", without an expressed definition or understanding of that term of art, was nothing more than a legal label, and an imprecise one at that, as assaults can be by offer, attempt, or battery.  Whatever

4

utility that disavowal may have been, it certainly was not an express denial of fear or apprehension.

Faced with this ambiguity, the military judge recalled the witness to obtain additional evidence which would hopefully foreclose the need to infer whether or not the victim was afraid. We highlight the fact that the military judge had no way of knowing what the answer would be. Specialist LH could just as easily have said that he felt no fear than that he did initially apprehend bodily harm. "Given the prospectivity of the analysis and the leeway for the conduct of trial and pursuit of truth necessarily afforded a trial judge, we find no reversible error in the Court's conduct of questioning in the present case." *United States v. Dock*, 40 M.J. 112, 128 (C.M.A. 1994). Therefore, we conclude the military judge neither appeared to abandon his impartial role nor abused his discretion by recalling SPC LH.

## CONCLUSION

On consideration of the entire record, the assigned error, the allegations raised by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and the briefs submitted by the parties, we conclude the findings of guilty and the sentence as approved by the convening authority are correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

Senior Judge COOK and Judge CAMPANELLA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court