**UNITED STATES**

v.

**Michael A. WHITE, Fire Control Technician Third Class (E–4), U.S. Navy.**

**NMCCA 200101242.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 2 Nov. 2000.

Decided 29 April 2005.

Lt Michael J. Navarre, JAGC, USNR, Appellate Defense Counsel.

LCDR Eric McDonald, JAGC, USN, Appellate Defense Counsel.

LtCol John Kennedy, USMCR, Appellate Government Counsel.

Before CARVER, Senior Judge, WAGNER, and REDCLIFF, Appellate Military Judges.

REDCLIFF, Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of willful damage to non-military property and indecent assault, in violation of Articles 109 and 134, Uniform Code of Mili-

tary Justice, 10 U.S.C. §§ 909 and 934. Pursuant to his pleas, the appellant was also convicted of a two-day unauthorized absence, violating a lawful liberty risk order, and fleeing apprehension, in violation of Articles 86, 92, and 95, UCMJ, 10 U.S.C. §§ 886, 892, and 895. The appellant was sentenced to reduction to pay-grade E–1, confinement for 3 years, total forfeiture of pay and allowances, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

We have carefully examined the record of trial and the appellant's four assignments of error contending that the evidence is legally and factually insufficient to sustain his conviction for willful damage to non-military property, that the evidence is factually insufficient to support his conviction for indecent assault, that he was denied a speedy trial in violation of Article 10, UCMJ, 10 U.S.C. § 810, and that his sentence is inappropriately severe.[1] We have also considered the Government's response and the appellant's reply brief. We conclude that the findings of guilty to willful damage to non-military property must be set aside and dismissed. After taking corrective action in our decretal paragraph, we conclude that the remaining findings and the reassessed sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant remains. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Sufficiency of Evidence—Willful Damage to Non-military Property

In the appellant's first assignment of error, he asserts that the evidence is both legally and factually insufficient to prove beyond a reasonable doubt that he willfully damaged non-military property in violation of Article 109, UCMJ. The appellant avers that this court should set aside the findings of guilty to Charge IV and its Specification. We agree that the evidence is factually insufficient in this case.

The facts regarding this offense are largely undisputed. On 6 July 2000, Mrs. "Y," a Japanese national, was driving her Toyota on Okinawa. As she approached an intersection at a speed of about 20 kilometers per hour, she made eye contact with the appellant, who was standing at the side of the street. After the appellant smiled at her, Mrs. Y believed that he would wait to cross the street until her vehicle had passed. Instead, the appellant walked from the sidewalk and "jumped" onto the "bonnet" of her vehicle. Record at 142. The Toyota's hood, windshield, and front fender sustained minor damage, with repairs costing 90,000 yen, or about $500.00. Security personnel from a nearby Marine Corps post responded to the scene and summoned medical care for the appellant, who was found unconscious and appeared seriously injured as a result of the collision.

In his defense, the appellant testified that on 6 July 2000 he had been drinking alcohol after becoming upset about an argument with his wife. Distraught, the appellant jumped in front of the vehicle driven by Mrs. Y in hopes of being struck by it and injured. Misjudging its speed, he was still airborne when he landed on top of its hood, causing the damage alleged. The appellant denied any intention of damaging the property, but rather admitted his sole purpose of jumping in front of the car was to cause injury to himself.

This court has an independent statutory obligation to review each case de novo for legal and factual sufficiency, and may substitute its own judgment for that of the trial court. See Art. 66, UCMJ, 10 U.S.C. § 866; United States v. Turner, 25 M.J. 324, 324–25 (C.M.A.1987). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found that all the essential elements were proven beyond a reasonable doubt. United States v. Reed, 54 M.J. 37, 41 (C.A.A.F.2000)(citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). "The test for factual sufficiency 'is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [this] court

---

1. On 24 September 2004, the appellant requested expedited appellate review of his case, which request was renewed on 18 March 2005 while this decision was pending final editing. On 5 November 2004, the appellant requested oral argument. That motion is hereby denied.

is 'convinced of the [appellant's] guilt beyond a reasonable doubt.' " *Reed,* 54 M.J. at 41 (quoting *Turner,* 25 M.J. at 325); *see* Art. 66(c), UCMJ. In exercising the duty imposed by this "awesome, plenary, *de novo* power," *United States v. Cole,* 31 M.J. 270, 272 (C.M.A.1990) (emphasis in original), this court may judge the credibility of witnesses, determine controverted questions of fact, and substitute its judgment for that of the military judge or court-martial members. Art. 66(c), UCMJ.

■ To sustain a conviction for willful damage to non-military property, the Government must prove the following elements:

(a) That the accused willfully and wrongfully destroyed or damaged certain personal property in a certain manner;

(b) That the property was that of another person; and

(c) That the property was of a certain value or the damage was of a certain amount.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Part IV, ¶ 33b(2). To constitute an offense under Article 109, UCMJ, the damage inflicted must be willful, that is, "intentional." MCM, Part IV, ¶ 33c(2); *see United States v. Bernacki,* 33 C.M.R. 173, 176, 1963 WL 4833 (C.M.A.1963). And even if the act causing the damage was intentional, such an act does not establish, on its own, that the appellant intended to damage the property. *See United States v. Yoakum,* 8 M.J. 763, 766–67 (A.C.M.R.1980)(affirming the accused's conviction for damaging three vehicles while driving enraged and at a high rate of speed, based on circumstantial evidence that demonstrated the damage to the vehicles was the result of willful action).

■ At trial and on appeal, the Government relies upon circumstantial evidence to sustain its burden of proving the appellant's requisite intent and cites *United States v. Hoyt,* 48 M.J. 839 (N.M.Ct.Crim.App.1998)(holding the accused's plea to Article 109, UCMJ, to be provident where he threw a bicycle out of

rage and admitted that he did so with the purpose of breaking something). While we agree with the Government's contention that an accused's intent can be proven by circumstantial evidence, we conclude that the application of this principle to the facts here does not support the conclusion that the appellant intended to damage Ms. Y's car.

In *United States v. Johnson,* 24 M.J. 101 (C.M.A.1987), the accused was convicted of the sabotage of two RF–4 aircraft, under 18 U.S.C. § 2155, and violation of Article 108, UCMJ, 10 U.S.C. § 908, willfully damaging the same aircraft by placing bolts in their engine intakes. The Air Force Court of Criminal Review set aside the conviction but was reversed by the Court of Military Appeals (CMA) on the issue of specific intent. In affirming Johnson's conviction of sabotage, the CMA held that the "intent" required under the statute meant the accused must have known:

'that the result is practically certain to follow', regardless of any desire, purpose, or motive to achieve the result. Thus, § 2155(a) would be satisfied if someone acted when he knew that injury to the national defense would be the almost inevitable result, even though the reason for his action had nothing to do with national defense.

*Id.* at 105.

The *Johnson* court further opined that an intent to cause certain results can be established by evidence that such results flow "naturally and probably from the action that was taken." *Id.* Thus, Johnson's volitional act of placing bolts in the engine intakes gave rise to a permissive inference that he acted with the knowledge of the likely consequences of doing so, and thus, intended such consequences. *Id.* However, the CMA further noted that because only a permissive inference is involved, specific "intent is lacking unless the factfinder determines not only that the prohibited results were highly foreseeable, but also that the accused, in fact, knew they were almost certain and nonetheless went ahead." *Id.* at 105–06.[2]

---

**2.** Few cases address the specific intent element of Article 109, UCMJ. Fewer cases examine the interplay of "motive," "purpose," "intended consequence," and "proximate cause" as these relate to the concept of "willfulness." Among these cases, see *United States v. Priest,* 7 M.J. 790

We hold that the evidence here is legally sufficient to sustain the appellant's conviction for violating Article 109, UCMJ. The Government presented sufficient evidence that a reasonable person might conclude that the appellant was guilty. However, we also hold that the evidence is factually deficient because, in our view, there is insufficient proof of the appellant's *mens rea*. We base this conclusion on our assessment of the evidence, both direct and circumstantial, regarding the appellant's intent: namely, the appellant's testimony that he had no intention of damaging the vehicle itself, coupled with unrebutted evidence of the appellant's emotional distress and his intoxication at the time of the incident, along with the relatively low speed of the vehicle upon impact.[3]

Considering all of these circumstances in their context, we are not convinced that the appellant was aware that damage to the vehicle was "almost certain" but nonetheless went ahead in his attempt to injure himself. *See Johnson,* 24 M.J. at 105–06. Nor do we find that the appellant knew that damage to the vehicle was highly foreseeable even though his volitional actions were clearly the proximate cause of the resulting damage. *See Johnson,* 24 M.J. at 105. Therefore, we are not convinced beyond a reasonable doubt that the appellant is guilty of violating Article 109, UCMJ, and will take corrective action in our decretal paragraph.

### Sufficiency of Evidence— Indecent Assault

■ In his second assignment of error, the appellant contends that the Government failed to prove beyond a reasonable doubt that he sexually assaulted Airman "W" because her testimony was unreliable and uncorroborated. The appellant avers that this court should disapprove the findings of guilty to Charge VI and its Specification. We disagree.

At trial, Airman W testified that she met the appellant at a Transient Personnel Unit and that he offered to help her find a place to live. At his invitation, Airman W agreed to pay $75 rent per month and moved into the off-base residence occupied by the appellant, his wife, and other boarders. Airman W indicated that some time later the appellant told her he was "interested" in her and would rub her feet. On the night of 4 July 2000, Airman W returned to the residence at approximately 2300, after attending a barbecue party. She testified that she tried to sleep in her third-floor bedroom but was unable to sleep because it was too hot. She then went to the second-floor living room and fell asleep on the sofa. Sometime afterwards, she awoke when she felt someone touch her hips and feel her feet. Suddenly, her shorts were "ripped" off, and she looked up and saw the appellant. Record at 110–111. The appellant then got on top of her and put his fingers inside her vagina for "a couple of seconds." *Id.* at 111. The appellant then asked Airman W if she wanted him to stop. She said yes and told him to get off of her "5 or 6 times" before he complied. *Id.* at 112. Airman W remained on the sofa following the assault and did not know where the appellant went afterwards.

On the following day, Airman W testified that she was upset at work and, when asked why, told her leading petty officer (LPO) about the incident. She also testified that she asked her LPO not to report it to their chain of command because she was uncomfortable with the situation. Airman W further testified that she also told a friend (someone named "Brad" who had lived with her and the appellant) about the assault after learning that the appellant was in the brig for other unrelated offenses. Finally, Airman W conceded several differences in her statement to the Naval Criminal Investigative Service but stated that this was because

(N.C.M.R.1979)(holding that the accused's plea to Article 109, UCMJ, was improvident where he admitted only that his operation of a boat in shallow water was reckless; *United States v. Garcia,* 29 M.J. 721 (C.G.C.M.R.1989)(holding that the accused's plea to Article 109, UCMJ, was improvident where he admitted only that he broke a glass display case to steal jewelry located

therein but that he did not intend to damage the display case); and, *Hoyt,* 48 M.J. 839 (N.M.Ct.Crim.App.1998)(questioning the validity of, but not overturning, *Priest*).

3. Mrs. Y testified that she was driving at 20 km/hr at the time of the collision, which converts to about 12.5 mph.

she was uncomfortable talking about the incident with a stranger.

The defense vigorously cross-examined Airman W and sought to discredit her by highlighting inconsistencies in her testimony concerning details of the assault. The defense also presented evidence on the merits by calling Seaman "F," who testified that he was a frequent overnight houseguest at the appellant's residence. Seaman F testified that he saw the appellant at his home between 2230 and 2300 on 4 July 2000, and that the appellant said he was sick and was going to go to sleep. Seaman F then went up to his third-floor bedroom and fell asleep around 0030. Finally, Seaman F testified that he never saw Airman W at the house that evening.

The defense next called Fireman "M," who testified that he was a former boyfriend of Airman W and that she told him she wanted to get out of the Navy. He further testified that she had asked him if she could get out of the service by getting pregnant. Fireman M concluded his testimony by opining that Airman W was an untruthful person.

Lastly, the appellant took the stand in his own defense and testified that the alleged assault never happened. The appellant asserted that he was ill with flu-like symptoms on the night it purportedly took place, so much so that he went to the emergency room at about 1700 on the following day and was prescribed antibiotics. The appellant asserted, without further explanation, that he believed Airman W fabricated the assault to get out of the Navy and chose to "pin it" on him because he was in the brig for other offenses.

Again, "[t]he test for factual sufficiency 'is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses,' [this] court 'is convinced of the [appellant's] guilt beyond a reasonable doubt.'" *Reed*, 54 M.J. at 41 (quoting *Turner*, 25 M.J. at 325); *see* Art. 66(c), UCMJ. Reasonable doubt does not require that the evidence presented be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R.1986). Further, this court may believe one part of a witness' testimony and disbelieve other aspects of his

or her testimony. *United States v. Harris*, 8 M.J. 52, 59 (C.M.A.1979). Our task here is to determine whether Airman W's testimony was sufficient to convict the appellant.

We have carefully considered the evidence presented at trial, keeping in mind that the fact-finder saw and heard all the witnesses. Art. 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F.2002). The appellant's allegations regarding Airman W's credibility and possible prior inconsistent statements were fully developed at trial and argued ably before the trial court. After careful review of the record, we find that Airman W's testimony was credible. We conclude that the evidence presented was both legally and factually sufficient. We are also convinced beyond a reasonable doubt of the appellant's guilt. We, therefore, find this assignment of error to be without merit, and decline to grant the requested relief.

### Remaining Assignments of Error

Finally, we considered the appellant's remaining assignments of error contending that he was denied a speedy trial under Article 10, UCMJ and that his sentence is inappropriately severe. We find no merit in these assertions and decline to provide relief.

### Conclusion

Charge IV and its Specification are set aside and dismissed. We affirm the remaining findings as approved by the convening authority. After reassessing the sentence pursuant to the principles of *United States v. Cook*, 48 M.J. 434, 438 (C.A.A.F.1998), *United States v. Peoples*, 29 M.J. 426, 428 (C.M.A. 1990), and *United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A.1986), we affirm the sentence approved by the convening authority.

Senior Judge CARVER and Judge WAGNER concur.